ALDENS, INC., Plaintiff-Appellant,

v.

Bronson C. LaFOLLETTE, Individually and as Attorney General for the State of Wisconsin, and Erich Mildenberg, Individually and as Commissioner of Banking, State of Wisconsin, Defendants-Appellees.

No. 76–1396.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1976.

Decided March 25, 1977.

As Amended on Denial of Rehearing En Banc April 25, 1977.

Donald L. Heaney, Madison, Wis., for plaintiff-appellant.

Bronson C. LaFollette, Atty. Gen., James D. Jeffries, Asst. Atty. Gen., Madison, Wis., for defendants-appellees.

Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiff is an Illinois corporation engaged in the business of selling merchandise by mail order. In the court below, plaintiff sought a declaratory judgment that Wisconsin could not constitutionally regulate its revolving charge account plan and agreements and transactions thereunder. In particular, plaintiff asserted that the application to Aldens of the Wisconsin Consumer Act (Wis.Stats. Title XL, Chaps. 421–427; W.S.A. 421–427) [1] should be de-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Chapter 428, concerning first lien real estate loans, was added to the Act in 1973 after the

clared unconstitutional under the Commerce Clause of Article I, § 8, and the Due Process Clause of the Fourteenth Amendment.[2]

A stipulation of facts and an affidavit of the Administrator of the Division of Consumer Credit of the Office of the Commissioner of Banking of Wisconsin were filed in the district court, and both parties filed motions for summary judgment. In March 1976, the district court handed down an unreported opinion and order granting summary judgment to the defendants.

The Wisconsin Consumer Act was designed to protect its residents from abuses in credit transactions. W.S.A. 421.102(2). One section of the Act provides that 18% per annum should be the maximum permissible finance charge for extension of credit under open-end credit plans such as Aldens offers.[3] This ceiling was established to prevent overreaching and was made applicable to all credit grantors competing in the Wisconsin market. The Act applies to transactions involving Wisconsin consumers and open-end creditors who mail or deliver goods, services or credit to a Wisconsin resident while the customer is within that state. In short, the Consumer Act applies to out-of-state firms that conduct business by mail with Wisconsin residents within Wisconsin.[4] There are no federal laws or regulations for a retailer's maximum finance or penalty charges.

In its opinion granting summary judgment to defendants, the district court set out the salient facts as follows: The two defendants are the Attorney General of Wisconsin and its Commissioner of Banking. They are responsible for the enforcement of the Wisconsin Consumer Act. Plaintiff, an Illinois corporation, has conducted a general retail merchandise mail order business from Chicago, Illinois, since 1902 and sells merchandise to customers in all fifty states. The buyer pays the transportation costs.

Aldens' only physical presence is in Chicago. It has no Wisconsin office or other place of business and has no representative or tangible property there. Aldens does not advertise in the Wisconsin media and has no Wisconsin telephone listing although a toll-free Illinois number is provided to its customers. Indeed, Aldens is not required to collect and remit the Wisconsin use tax.

Aldens mails catalogs to Wisconsin residents four times a year and also mails them supplemental advertisements six to eight times a year. In the spring of 1973, it solicited approximately 350,000 Wisconsin residents by mailing them catalogs and "flyers." Aldens' active Wisconsin custom-

---

filing of the complaint and is not material to the issues in this case. L.1973, c. 18, § 4, effective April 22, 1973. 1973 Wis.Leg.Serv. 32–34.

**2.** In its complaint, the plaintiff also attacked the Wisconsin statute on the ground that it violated the postal clause of Article I, Section 8, Supremacy Clause of Article VI, and the First Amendment. On appeal, the attack is limited to the Commerce and Due Process Clauses.

**3.** An open-end credit plan is defined in W.S.A. 421.301(27) as that situation where a creditor allows a customer "to make purchases * * from time to time, directly from the creditor" and the customer "has the privilege of paying the balance in full or in installments" and the creditor may compute a finance charge "from time to time on an outstanding unpaid balance."

**4.** The section on territorial application provides in pertinent part:

"(2) For the purpose of this act, a consumer transaction or modification of a consumer transaction is made in this state if:

\* \* \* \* \* \*

"(b) The merchant induces the customer who is a resident of this state to enter into the transaction by face-to-face solicitation or by mail or telephone solicitation directed to the particular customer in this state.

"(3) With respect to a transaction pursuant to an open-end credit plan, this act applies if the customer is a resident of this state and the open-end creditor or a merchant honoring a credit card issued by the open-end creditor, is a resident of this state or furnishes, mails or delivers the goods, services or credit to a resident of this state while the customer is within this state or receives a writing signed by the customer and evidencing the transaction in this state." W.S.A. 421.201.

er list contains 65,000 names and its inactive customer list sets forth another 9,000.

The credit application forms for credit accounts and credit agreement forms are mailed by Aldens to Wisconsin residents. These forms and agreements are signed by Wisconsin residents in that state and are mailed from there to Aldens in Illinois. Aldens then determines the credit worthiness of the Wisconsin customer through a procedure that sometimes includes phoning Wisconsin credit bureaus. Aldens rejects about 40% of all its new credit applications and 6% of all orders received from current credit customers. Credit is granted only in Chicago and orders are only accepted there.

Aldens' sales to Wisconsin customers average $4,600,000 per year, with 73% of this amount derived from credit sales. Aldens has approximately 23,000 Wisconsin credit customers with an average credit account balance of $164.81. 2.34% of its annual sales are made to Wisconsin customers. It is probable that sales to, as well as the number of, Wisconsin customers will increase.

Aldens retains a purchase money security interest in merchandise sold pursuant to the credit agreements with its customers. However, it files no financing statement or security agreement and does not enforce this security interest. Merchandise sold by Aldens to Wisconsin customers is sent to them by mail or common carrier from Chicago or by shipment from some other place outside Wisconsin. Aldens mails its monthly statements in Chicago to its Wisconsin credit customers following their purchases of merchandise. These statements set forth the charges to the customer's account and require payment by a stated date to avoid the assessment of finance charges. All monthly payments for merchandise purchased and finance charges assessed are mailed in Wisconsin to Aldens in Chicago by its Wisconsin customers. If a Wisconsin customer becomes delinquent in paying his account, Aldens attempts to collect it through letters and other communications

mailed from Chicago to the customer in Wisconsin and sometimes by telephone from Chicago to the Wisconsin customer. If an account has been delinquent for six months, Aldens writes it off as a bad debt. It turns over half of the Wisconsin written-off accounts to Illinois or Minnesota independent collection agencies for collection.

Aldens' National Credit Agreement provides that it is an Illinois contract permitted by Illinois law and specifies a monthly finance charge at the annual percentage rate of 21%, in excess of the 18% permitted by W.S.A. 422.201.[5] The credit agreement is valid under Illinois law and the Federal Truth in Lending Act (15 U.S.C. §§ 1601–1665).

In presently complying with the Wisconsin Consumer Act, Aldens incurs the following annual costs, expenses and revenue losses:

a. Additional cost of preparing catalogs and advertising materials containing Wisconsin credit terms

$51,000

b. Special computer processing and handling costs for Wisconsin customers in setting up accounts and producing monthly billing statements

13,700

c. Loss of revenue on elimination of minimum charges

7,200

d. Loss of revenue on account of Wisconsin finance charge rate

92,000

TOTAL $163,900

I

Aldens maintains, in short, that it is the quintessential interstate trader with no objective manifestation of itself extant within Wisconsin. Therefore Aldens argues that the Due Process Clause of the Fourteenth Amendment and the Commerce Clause positively deny Wisconsin the power to regulate its operations. Moreover, even if power to regulate Aldens exists, Aldens argues that

---

**5.** Pending the outcome of this litigation, Aldens has adopted a credit agreement for use of its Wisconsin customers that complies with the Wisconsin Consumer Act.

federalist considerations prevent its exercise here. We shall consider these constitutional arguments in reverse order.

## II

■ The federalist argument appeals to a pair of hoary constitutional doctrines. The argument's first branch calls on the Commerce Clause cases which invalidate state regulation of a trader in interstate commerce if his regulation together with that of other traders similarly situated would place an undue burden upon interstate commerce. Its second prong draws on the line of cases which recognize a due process limitation on the extraterritorial exercise of a state's legislative power. If we were presented with these interest-balancing-based arguments as applied to Aldens on first impression, their resolution would not be a trivial matter.[6] However, prior cases involving Aldens make any independent exegesis on our part totally pointless.

Before this case was decided by Judge Doyle, a companion case was filed by Aldens seeking a declaratory judgment that the similar Pennsylvania Goods and Services Installments Sales Act was unconstitutional as applied to Aldens. However, its Commerce Clause and Due Process arguments were rejected. *Aldens, Inc. v. Packel,* 379 F.Supp. 521 (M.D.Pa.1974). A year later, the Court of Appeals for the Third Circuit affirmed (524 F.2d 38), and certiorari was subsequently denied. 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187. Judge Gibbons' well-considered opinion for the Third Circuit thoroughly discusses the balancing issues raised on appeal before us. We fully agree with his disposition and adopt his opinion as our own.[7]

Subsequent to the decision below, the United States District Court for the Western District of Oklahoma filed a memorandum opinion that comparable provisions of the Oklahoma statutes do not violate the Commerce or Due Process Clauses. *Aldens, Inc. v. Ryan,* No. CIV–75–0458–D, decided June 14, 1976. An appeal is now pending before the Tenth Circuit. We are also in accord with District Judge Daughtery's reasoning.

The relevant post-*Packel* Supreme Court Commerce Clause opinions which invalidate state legislation as unduly burdensome on interstate commerce are fully consistent with our result on the balancing issue. *Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 370–372, 96 S.Ct. 923, 47 L.Ed.2d 55 and n. 6 reaffirms the *Pike v. Bruce Church, Inc.*[8] rule that state regulations involving a legitimate local interest are not invalid because they affect interstate commerce unless the burden on such commerce is, on balance, clearly excessive in relation to the local benefits. *Dixie Dairy Co. v. City of Chicago,* 538 F.2d 1303 (7th Cir. 1976). A balancing inquiry reveals no such burden here. See *Aldens, Inc. v. Packel, supra,* 524 F.2d at 47–50.

■ *Boston Stock Exchange v. State Tax Commission,* —— U.S. ——, 97 S.Ct. 599, 50 L.Ed.2d 514, recently invalidated a tax discriminating against interstate commerce but did not involve the exercise of state police power for the protection of state citizens. The police power of a state and its power to tax are of course treated differently for constitutional purposes. See *Freeman v. Hewit,* 329 U.S. 249, 253, 67 S.Ct. 274, 91 L.Ed. 265. Unlike the exercise of a state's police power which is sustaina-

---

**6.** This is a case where the basic premise of the Commerce Clause interest-balancing line of reasoning would be present, *viz.:*

"[a] State interfer[ing] with the natural functioning of the interstate market either through prohibition or through burdensome regulation." *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806, 96 S.Ct. 2488, 2496, 49 L.Ed.2d 220.

**7.** In the court below, Judge Doyle also adopted the reasoning of the Court of Appeals for the

Third Circuit in *Aldens, Inc. v. Packel.* Because a petition for certiorari was then pending, his opinion, with which we are fully in accord, commented on the issues raised in Aldens' petition for writ of certiorari to the Third Circuit. Since that petition was denied, we need not consider it.

**8.** 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174.

ble absent an undue burden on interstate commerce which is clearly excessive in relation to local benefits, *Great Atlantic & Pacific Tea Co. v. Cottrell, supra,* "extraterritorial impositions of tax collection obligations have been upheld only when it can be said that a benefit has been conferred on the tax collector by virtue of the state's sovereignty, and the tax is related to that benefit." *Aldens, Inc. v. Packel, supra,* 524 F.2d at 43–44; *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 108, 95 S.Ct. 1538, 44 L.Ed.2d 1. But it is Wisconsin's police power, exercised to protect its citizen-consumers from oppressive credit terms, which is implicated here. The question of taxation of business in interstate transactions is not involved. The Wisconsin Consumer Act merely regulates plaintiff's dealings with Wisconsin residents and the only fee imposed is to cover the costs of administering the Act. W.S.A. 426.202. Judge Doyle found that the fee provisions of the Act in fact were necessary for its administration. Therefore, the *Boston Stock Exchange* case is of no help to Aldens. Thus federalist considerations do not pretermit this regulation.

### III

 Aldens' most vigorous constitutional attack questions the very existence of Wisconsin's power to regulate a purely interstate trader. To be sure, if not fully equivalent, Aldens' conduct asymptotically approaches that of the paradigm interstate trader. But so long as the interstate trader's conduct has a "connection in fact" with a state producing an effect within a state, the interstate character of his conduct is only an element of the interest-balancing analysis of the "federalist" arguments just addressed. *Nippert v. Richmond,* 327 U.S. 416, 423–424, 66 S.Ct. 586, 90 L.Ed. 760.

Most especially in the exercise of the police power, state sovereignty is, in many areas of interstate commerce, parallel to and concurrent with that of the federal government. *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 442, 80 S.Ct. 813, 4 L.Ed.2d 852; *California v. Thompson,* 313 U.S. 109, 112–113, 61 S.Ct. 930, 85 L.Ed. 1219; see *National League of Cities v. Usery,* 426 U.S. 833, 840–845, 96 S.Ct. 2465, 49 L.Ed.2d 245. As we demonstrate below, nothing in the Due Process Clause or the Commerce Clause casts doubt on this tenet of federalism.

### A. *Due Process Clause*

 State sovereignty is not absolute. State power can only be exercised against a person within the confines of due process of law drawn by its procedural and substantive aspects. However, since substantive due process is now limited to a commitment to fundamental fairness (*Whalen v. Roe,* ─── U.S. ───, ───, 97 S.Ct. 869, 51 L.Ed.2d 64), substantive due process analysis is generally academic because the application of any regulation which is fundamentally unfair also would not withstand a procedural analysis. Here Aldens argues that substantive due process independently denies Wisconsin the jurisdiction to prescribe those portions of the Wisconsin Consumer Act which apply to interstate mail order houses.[9] Cf. *Rivard v. United States,* 375 F.2d 882, 885 (5th Cir. 1967), certiorari denied, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181.

 Undoubtedly, substantive due process imposes a floor on the nexus between a person and his practices relative to a state which will be sufficient to support legislation running against him.[10] Cf. *Pacific Seafarers, Inc. v. Pacific Far East*

---

**9.** Aldens makes the following distinction: "Judicial jurisdiction to enforce the terms of a contract entered into in another state is vastly different from the legislative power which is required to dictate the substantive terms of the contract at its inception. It is the fundamental difference of enforcing the contract in Wisconsin as it was entered into in Illinois on the one hand and establishing the substantive terms of that contract as it was made in Illinois on the other hand that is the very essence of the difference between service of process cases and cases with sufficient contacts to sustain regulatory jurisdiction which can change or dictate the terms of the contract." (Reply Br. at 8.)

**10.** Suppose that many Wisconsin citizens have summer homes in Minnesota. Wisconsin could not regulate Aldens' credit terms in mailings to

*Line, Inc.,* 131 U.S.App.D.C. 226, 404 F.2d 804, 815 (1968), certiorari denied, 393 U.S. 1093, 89 S.Ct. 872, 21 L.Ed.2d 784. And the connection between a state and the regulated person must be of a more substantial character than the "minimum contacts" needed to support judicial process running against a person. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 652–653, 70 S.Ct. 927, 94 L.Ed. 1154 (Douglas, J., concurring); cf. Comment, Corporate Registration: A Functional Analysis of "Doing Business," 71 Yale L.J. 575, 585–586 nn. 54 and 56 (1962). But by now "objective territoriality," at least in domestic cases, is beyond argument, *viz.:*

> "any state may impose liabilities, even upon persons not within its allegiance, for conduct outside its borders that has consequences within its borders which the state reprehends * * *." *United States v. Aluminum Co. of America,* 148 F.2d 416, 443 (2d Cir. 1945).

*Travelers Health Assn. v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154; see *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–317, 63 S.Ct. 602, 87 L.Ed. 777. As for the Wisconsin Consumer Act, it has not been

> "shown to be other than what on its face it appears to be, a measure to safeguard

Wisconsin citizens at their Minnesota summer addresses. *New York Life Ins. Co. v. Dodge,* 246 U.S. 357, 376–377, 38 S.Ct. 337, 62 L.Ed. 772; *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178.

11. Aldens points out that at no time has there ever been an allegation that its credit practices are unfair, deceptive, false, misleading or unconscionable. Thus Aldens maintains that applying the Act to the company is not rationally related to the expressed purposes of the Act, especially where Wisconsin is operating near the outer boundary of its legislative power. Aldens apparently views this situation as containing an equal protection violation. (Reply Br. 1–7.)

The Wisconsin Consumer Act is "manifestly the product of an orderly and rational legislative decision." *Whalen v. Roe,* —— U.S. ——, ——, 97 S.Ct. 869, 875, 51 L.Ed.2d 64. The fact that no allegations have been raised against Aldens of unfair credit practices does not violate equal protection. The Supreme

the members of the public desiring to secure [goods] by [credit], who are peculiarly unable to protect themselves from fraud and overreaching of those engaged in a business notoriously subject to those abuses." [11] *California v. Thompson,* 313 U.S. 109, 112–113, 61 S.Ct. 930, 932, 85 L.Ed. 1219.

Protecting Wisconsin citizens from usurious credit terms imposed when they are residents of the state certainly meets due process minimums.[12]

### B. Commerce Clause

"[T]he Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States." *Freeman v. Hewit,* 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265. But the scope of the limitation has evolved through a balancing analysis. "The Commerce Clause does not, however, eclipse the reserved 'power of the States * * *.'" *Boston Stock Exchange v. State Tax Commission,* —— U.S. ——, ——, 97 S.Ct. 599, 606, 50 L.Ed.2d 514; *California v. Thompson,* 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219. The mere fact that the person regulated is an interstate trader does not *ipso facto* override the independent sovereignty of the states. *Complete Auto Transit, Inc.*

Court has "frequently recognized that individual States have broad latitude in experimenting with possible solution to problems of vital local concern." *Id.* Since the Act is economic legislation clearly justified by Wisconsin's interest in protecting its citizens from sharp credit practices, it does not offend the equal protection clause. *McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Williamson v. Lee Optical Co.,* 348 U.S. 483, 488–489, 75 S.Ct. 461, 99 L.Ed. 563.

12. "It is the nature of the state's action that determines the kind or degree of activity in the state necessary for satisfying the requirements of due process." *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 653, 70 S.Ct. 927, 932, 94 L.Ed. 1154 (Douglas, J., concurring). The police power requires less of a nexus than a state's power to tax or to regulate intrastate commerce. Protection of its citizens is the primary function of state government. *Freeman v. Hewit,* 329 U.S. 249, 253, 67 S.Ct. 274, 91 L.Ed. 265.

*v. Brady,* —— U.S. ——, 97 S.Ct. 1076, 51 L.Ed.2d 326; *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245; *Robertson v. California,* 328 U.S. 440, 458–459, 66 S.Ct. 1160, 90 L.Ed. 1366. As we noted above, that fact is only relevant to the process of balancing those interests which animate the Commerce Clause with the state's legitimate local interests. See Beaird & Ellington, A Commerce Power Seesaw: Balancing *National League of Cities,* 11 Ga.L.Rev. 35 (1976). When Congress has chosen not to legislate in the field, the Commerce Clause cannot *ex proprio vigore* vitiate state sovereignty unless state regulation creates an undue burden on interstate commerce. *Complete Auto Transit, Inc. v. Brady, supra.*

■ Those cases which find state regulation against a purely interstate trader unconstitutional are best conceptualized as declaring that regulations of a certain character are *per se* undue rather than void *ab initio* as forbidden restraints on a purely interstate trader. Such *per se* regulations may be generically deemed as undue because of a pernicious effect on interstate trade without a correspondingly high state justification. See *International Harvester Co. v. Dept. of Treasury,* 322 U.S. 340, 353, 64 S.Ct. 1019, 88 L.Ed. 1313 (Rutledge, J., concurring); cf. *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545. The propriety of such a generic judgment was eloquently demonstrated thirty years ago by Justice Frankfurter:

"These principles of limitation on State power apply to all State policy no matter what State interest gives rise to its legislation. A burden on interstate commerce is none the lighter and no less objectionable because it is imposed by a State under the taxing power rather than under manifestations of police power in the conventional sense. But, in the necessary accommodation between local needs and the overriding requirement of freedom for the national commerce, the incidence of a particular type of State action may throw the balance in support of the local need because interference with the national interest is remote or unsubstantial. A police regulation of local aspects of interstate commerce is a power often essential to a State in safeguarding vital local interests. At least until Congress chooses to enact a nationwide rule, the power will not be denied to the State. State taxation falling on interstate commerce, on the other hand, can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys. But revenue serves as well no matter what its source. To deny to a State a particular source of income because it taxes the very process of interstate commerce does not impose a crippling limitation on a State's ability to carry on its local function. Moreover, the burden on interstate commerce involved in a direct tax upon it is inherently greater, certainly less uncertain in its consequences, than results from the usual police regulations. The power to tax is a dominant power over commerce. Because the greater or more threatening burden of a direct tax on commerce is coupled with the lesser need to a State of a particular source of revenue, attempts at such taxation have always been more carefully scrutinized and more consistently resisted than police power regulations of aspects of such commerce." *Freeman v. Hewit,* 329 U.S. 249, 253, 67 S.Ct. 274, 277, 91 L.Ed. 265. (Omitting citations.)

Under this analysis, it can be seen that Aldens' principal case, *viz., National Bellas Hess v. Dept. of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505, does not aid plaintiff. Aldens' protestations that *Bellas Hess* is not a tax case are contradicted by the opinion itself. The initial construction of its constitutional argument made clear that *Bellas Hess* was being analyzed as a tax case:

"For the test whether a *particular state exaction* is such as to invade the exclusive authority of Congress to regulate trade between the States, and the test for a State's compliance with the requirements of due process in this area are similar."

(Emphasis supplied.) 386 U.S. at 756, 87 S.Ct. at 1391.

Every case cited by the Court deals not with the power to regulate but rather with the power to tax. Any doubt that *Bellas Hess* was being analyzed as a tax case, even though strictly speaking the duty imposed on Bellas Hess was to collect a tax falling on someone else, was conclusively dispelled by footnote 9. 386 U.S. at 757 n. 9, 87 S.Ct. 1389. Thus as a *de facto* tax on a purely interstate trader, the legislation in *Bellas Hess* was a *per se* undue burden.

Likewise, *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195, concerns state regulation which may be generically deemed as an undue burden on interstate commerce. There the Court held unconstitutional a state's refusal to honor and enforce contracts made for interstate or foreign commerce because of the enforcing corporation's failure to qualify to do business in the state.[13] Such a refusal to honor was generically repugnant to the central purposes of the Commerce Clause. Indeed, the opinion implicitly declares the refusal to honor to be a heavier burden on interstate commerce than local tax incidents. 419 U.S. at 33–34, 95 S.Ct. 260.

Contrary to *Bellas Hess,* the case now before us is an exercise of the police power. As such it is inappropriate to treat it on a *per se* basis. See *Eli Lilly & Co. v. Sav-On-Drugs,* 366 U.S. 276, 284 n. 1, 81 S.Ct. 1316, 6 L.Ed.2d 288. (Harlan, J., concurring). Rather, a balancing test is in order. *South Carolina Hwy. Dept. v. Barnwell Bros.,* 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734. Since the Wisconsin Consumer Act has already been shown not to be an undue burden on interstate commerce under a balancing analysis, see part II *supra,* the Act is, therefore, constitutional.

### IV

For the foregoing reasons, we find that the application of the Wisconsin Consumer Act to Aldens is constitutional and there-

fore affirm the judgment of the district court.

AFFIRMED.

---

**13.** Although the transaction had intrastate aspects, they were of the sort which are "in fact 'a part of interstate commerce.'" 419 U.S. at

30, 95 S.Ct. at 266. Thus *Allenberg* was in all material respects purely an interstate trader.