**Herbert R. SILVER, d/b/a Allied Bond and Collection Agency**

v.

**Brian J. WOOLF, in his capacity as Acting Banking Commissioner of the State of Connecticut.**

Civ. No. H–81–872.

United States District Court, D. Connecticut.

May 6, 1982.

Robert N. Wienner, Cohn & Birnbaum, Hartford, Conn., for plaintiff.

John G. Haines, Jonathan L. Ensign, Asst. Attys. Gen., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

In this action for a declaratory judgment the plaintiff, the sole proprietor of a consumer collection agency located in Philadelphia, Pennsylvania, contends that Section 42–127a(a) of the Connecticut General Statutes is unconstitutional on its face and as applied to the plaintiff under the due process and commerce clauses of the United States Constitution.

Conn.Gen.Stat. § 42–127a(a) requires that all consumer collection agencies acting within the State of Connecticut obtain a license from the State Commissioner of Banking. It provides that

> [a] consumer collection agency is acting within this state if it ... (3) has its place of business located outside this state and regularly collects from consumer debtors who reside within this state for creditors whose place of business is located outside this state.

*Id.* The plaintiff characterizes his business as a "national collection agency which on behalf of its clients seeks to collect debts from debtors located in all of the 50 states and in a number of U. S. territories and foreign countries." It has no offices, employees or property in Connecticut and seeks to collect outstanding debts from Connecticut debtors solely through mail and telephone communications.

Beginning in July 1980 the Consumer Credit Division of the Connecticut Banking Department received a number of complaints from Connecticut consumer debtors concerning the collection practices of the plaintiff's company. Defendant's Motion for Summary Judgment Exhibits A–1 through A–17. The Department began a correspondence with the plaintiff in order to determine if his company was subject to the licensing requirements of Conn.Gen. Stat. § 42–127a. The plaintiff responded by refusing to provide any information concerning the scope of his activities in Connecticut on the basis of his position that his company was not subject to Connecticut law because its only contacts with the state are by mail and telephone communication. After receiving additional complaints about the plaintiff's company, the Department told the plaintiff that it considered his company subject to the licensing requirements of Conn.Gen.Stat. § 42–127a and began informing the plaintiff's clients that his company was not licensed as required by Connecticut law and that, therefore, referral of accounts to his collection agency for collection from Connecticut debtors is prohibited by Conn.Gen.Stat. § 42–131a(b).[1] Three of the plaintiff's clients have been contacted by the Department so far.

On September 14, 1981 the Banking Department commenced formal proceedings against the plaintiff's company to enforce the licensing requirement. A hearing was held on November 4, 1981, and on March 30, 1982 the Banking Commissioner issued a decision ordering the plaintiff to cease and desist from acting as a consumer collection agency in Connecticut without a license.[2]

On November 10, 1981 the plaintiff filed this action under 42 U.S.C. § 1983 seeking a declaratory judgment that Conn.Gen.Stat. § 42–127a(a) is unconstitutional on its face and/or as applied to the plaintiff. He also seeks an injunction to restrain the Banking Commissioner from (1) enforcing Conn.Gen. Stat. § 42–127a(a) against the plaintiff and (2) enforcing Conn.Gen.Stat. § 42–131a(b) against the plaintiff's clients insofar as it relates to plaintiff's status under Conn.Gen. Stat. § 42–127a(a). The defendant has moved for summary judgment. A hearing was held before this court on January 25, 1982 on the plaintiff's motion for a preliminary and permanent injunction and on the defendant's motion for summary judgment.

The two grounds upon which the defendant urges this court to dismiss this suit without reaching the merits are considered *in limine.*

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although there were state administrative proceedings pending at the time the federal complaint was filed, the fact that the plaintiff did not exhaust his administrative remedies prior to filing this lawsuit does not preclude this court from taking jurisdiction.

While a plaintiff is generally required to exhaust his administrative remedies prior to commencing an action seeking judicial relief, *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), the Supreme Court has held on numerous occasions that

---

1. Conn.Gen.Stat. § 42–131a(b) provides:

 No creditor shall retain, hire, or engage the services or continue to retain or engage the services of any person who engages in the business of a consumer collection agency and who is not licensed to act as such by the commissioner, if such creditor has actual knowledge that such person is not licensed by the commissioner to act as a consumer collection agency.

2. Enforcement of the Banking Commissioner's order has been temporarily enjoined by a temporary restraining order entered by this court on April 12, 1982.

state administrative remedies need not be exhausted prior to commencing a federal civil rights action under 42 U.S.C. § 1983. *E.g., Ellis v. Dyson*, 421 U.S. 426, 432–33, 95 S.Ct. 1691, 1694–95, 44 L.Ed.2d 274 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 574–75, 93 S.Ct. 1689, 1695–96, 36 L.Ed.2d 488 (1973). In this circuit this line of cases has been interpreted to "mean not that state administrative remedies need never be exhausted prior to commencement of § 1983 suits, but merely that the exhaustion requirement should not be given 'wooden application.'" *Swan v. Stoneman*, 635 F.2d 97, 103 (2d Cir. 1980) (quoting from *Eisen v. Eastman*, 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied*, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970)). Exhaustion is not required where it would be futile because the question of the adequacy of the administrative remedy is "for all practical purposes coextensive with the merits of the plaintiff's constitutional claims," *Fuentes v. Roher*, 519 F.2d 379, 387 (2d Cir. 1975), or where the issue is one where there is no need for the "exercise of agency discretion or expertise," *Touche Ross & Co. v. Securities & Exchange Commission*, 609 F.2d 570, 577 (2d Cir. 1979). In addition, an agency can in some circumstances be found to have waived the exhaustion requirement by stipulation or by adopting a final position prior to completion of the entire administrative process. *Greenberg v. Bolger*, 497 F.Supp. 756, 772 (E.D.N.Y.1980).

█ The plaintiff contends that the federal Constitution prevents the state from enforcing its licensing requirement against the plaintiff. His claim is solely one of federal constitutional law on which the agency has no expertise. In addition, the hearing examiner had made it clear prior to the institution of this federal suit that she would not make any decision on the constitutional issues. There is no reason, therefore, to apply the doctrine requiring the exhaustion of administrative remedies.

## II. ABSTENTION

█ The doctrine of equitable restraint requires that a federal court abstain from enjoining pending state enforcement proceedings at least in the absence of extraordinary circumstances, such as bad faith or harassment on the part of the state prosecution, or a facial attack on a patently unconstitutional statute. *Younger v. Harris*, 401 U.S. 37, 53–54, 91 S.Ct. 746, 754–755, 27 L.Ed.2d 669 (1971). It has been applied to a variety of state civil proceedings. *E.g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state proceeding to remove custody of children from their parent); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (enforcement action to attach property pursuant to a state action to recover wrongfully paid welfare benefits); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state's contempt process); *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state nuisance proceeding). The doctrine is based upon the rationale that principles of equity and federalism preclude a federal court from interfering with an ongoing state proceeding which offers the federal plaintiff a fair forum for the resolution of his federal claims. *See, e.g., Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750.

The defendant in this case contends that because the plaintiff has a right to appeal the Banking Commissioner's decision to the state Superior Court under Conn.Gen.Stat. § 4–183 the principles of equitable restraint require this court to abstain in favor of the state's judicial process. The defendant characterizes the administrative appeal afforded by Conn.Gen.Stat. § 4–183 as a continuation of the administrative enforcement proceeding and, therefore, views the state proceedings as ongoing at the present time. In fact, there are no state proceedings pending at the present time. The administrative proceedings before the Banking Commission have been completed. All that remains to be done is the enforcement of the Commissioner's order which has been temporarily restrained by this court. The plaintiff has no state forum in which to pursue his constitutional challenge to this licensing statute unless he chooses to seek

judicial review of the Commissioner's decision under Conn.Gen.Stat. § 4–183.

 The fact that the plaintiff has the option of seeking judicial review is not sufficient to require this court to abstain. A federal civil rights plaintiff is not required to exhaust state *judicial* remedies prior to coming to federal court. *E.g., Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 574 n.13, 93 S.Ct. 1689, 1695 n.13, 36 L.Ed.2d 488 (1973). Abstention is not required in this case because there is lacking "the most fundamental requirement for the exercise of equitable restraint[,] ... the existence of an *ongoing* state proceeding where the federal plaintiff's claims can be heard," *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210, 216 (D.Conn.1978) (emphasis added).

I turn next to consider the merits.

### III. THE MERITS

#### A. *The Propriety of Summary Judgment*

The plaintiff challenges the constitutionality of Conn.Gen.Stat. § 42–127a on its face and as applied to the plaintiff's company. The defendant has moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, the relevant portion of which is set forth in the margin.* Despite his initial concession that this case is "entirely free of material factual dispute," Pre-Hearing Memorandum of the Plaintiff at 26, the plaintiff now attempts to defeat the defendant's motion for summary judgment by characterizing two issues as raising material factual disputes. He contends that (1) a genuine issue of material fact "may exist" as to the extent of plaintiff's contacts with Connecticut and that (2) the magnitude of the burden placed on the plaintiff by enforcement of Connecticut's licensing statute raises a genuine issue of material fact. Plaintiff's Statement

Re Material Facts in Dispute filed January 19, 1982.

The court finds that no genuine dispute exists as to either of these factual issues and that, therefore, the case is appropriate for resolution by summary judgment. On the question of the extent of the plaintiff's contacts with Connecticut, the plaintiff stipulated at the administrative hearing that "there is a regular course of contact with debtors located in the State of Connecticut conduct[ed] solely by mail and phone calls from the respondent's [the plaintiff herein] office in Philadelphia." Transcript of November 4, 1981 hearing at 19. On the basis of this stipulation, the court finds that there is no disputed factual issue concerning the extent of the plaintiff's contacts with Connecticut. Whether a regular course of contact conducted solely by mail and phone is sufficient to enable the state to subject the plaintiff to its licensing statute is solely a question of law appropriate for resolution by summary judgment.

Despite the plaintiff's assertion to the contrary, there also does not appear to be a significant dispute as to the magnitude of the burden placed upon the plaintiff by this licensing statute. The defendant has submitted an affidavit which clarifies precisely what the Connecticut Banking Department's procedures are in enforcing its licensing statute. The plaintiff has not contradicted these sworn statements that (1) the Connecticut Banking Department does not require a consumer collection agency to convert from a cash basis accounting system to an accrual basis accounting system and that (2) the Department's policy is not to require an inspection of an out-of-state licensee's books and records unless there has been a complaint which resulted in formal proceedings. The extent of the burdens placed on the plaintiff by this licensing statute has been established, and any question concerning whether these burdens can

---

* "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

be imposed consistent with the due process and commerce clauses of the United States Constitution is solely an issue of law appropriate for summary judgment.

## B. *The Commerce Clause*

The primary thrust of the plaintiff's constitutional challenge is based upon his contention that Conn.Gen.Stat. § 42–127a(a) imposes an unconstitutional burden on interstate commerce in violation of Article I, § 8 of the United States Constitution. The plaintiff contends that his business as a debt collector is one conducted solely through interstate commerce and that under a doctrine most recently expressed in *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), a state cannot condition an interstate business's right of access to its markets by requiring such a business to obtain a license. The defendant argues that such a per se rule is not the law and that at any rate the plaintiff's business is not one involving purely interstate commerce. The defendant asserts that the appropriate standard for judging the constitutionality of Connecticut's licensing scheme is the balancing test enunciated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). The plaintiff disagrees that the *Pike* standard applies but argues that, at any rate, Conn.Gen.Stat. § 42–127a(a) cannot be sustained even under such a balancing test.

### 1. *The Applicable Constitutional Standard*

The first issue to be resolved is the appropriate legal standard to apply in judging the constitutionality of Conn.Gen.Stat. § 42–127a(a). In most situations, the rule expressed in *Pike v. Bruce Church*, 397 U.S. at 142, 90 S.Ct. at 847, applies:

> Where the [state] statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree.

*Id.* (citations omitted). This standard requires the court to balance the state's interest in the regulation against the burden it imposes on interstate commerce.

The plaintiff cites a line of authority which he reads as requiring a different approach when "purely interstate commerce" is involved. These cases involve situations where a company engaged in purely interstate commerce is required by a state to register as a foreign corporation in order to have access to the state's courts. *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *Eli Lilly & Co. v. Sav-On Drugs*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961) (dictum); *Sioux Remedy Co. v. Cope*, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193 (1914). The plaintiff reads these cases as establishing an absolute rule precluding a state from requiring that a purely interstate business obtain a license from the state in order to have access to state markets. He characterizes his company as such a purely interstate business and, therefore, concludes that he cannot be subjected to Connecticut's licensing requirement.

The plaintiff's attempt to reduce the problem to the meaning ascribed to the single phrase, "purely interstate commerce," is not supported by *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195. *Allenberg* involved a cotton merchant who purchased cotton from a Mississippi farmer for sale in other states. When the merchant sued the farmer for the contract price in a Mississippi court, his complaint was ultimately dismissed due to his failure to register with the state as a foreign corporation. *Id.* The Court, stressing that the intricate interstate cotton marketing exchange requires federal protection under the commerce clause, held that, despite incidental intrastate aspects, the transaction was one within the "stream of interstate commerce," *id.* at 30, 95 S.Ct. at 266 and that, therefore, the state's "refusal to honor and enforce contracts made for interstate or foreign commerce is repug-

nant to the Commerce Clause," *id.* at 34, 95 S.Ct. at 267. Professor Laurence Tribe interprets this case as being

> strongly influenced by the fact that the state . . . seemed to be interfering with the operation of the national futures market in cotton by preventing interstate purchasers who had failed to qualify as "foreign corporations" under local law from effectively protecting themselves against unexpected price increases.

L. Tribe, *American Constitutional Law* 344 (1978). The Court in *Allenberg* was concerned with protecting the interstate commodities market itself. *Allenberg* should not be read to establish a per se rule that bars a state from regulating purely interstate businesses solely because of their interstate character. The Seventh Circuit has interpreted the *Allenberg* line of cases as representing one application of the *Pike* balancing test rather than establishing an absolute rule that state regulation of purely interstate commerce is "void ab initio." *Aldens, Inc. v. LaFollette,* 552 F.2d 745, 752 (7th Cir.), *cert. denied,* 434 U.S. 880, 98 S.Ct. 236, 54 L.Ed.2d 161 (1977).

In *Eli Lilly & Co. v. Sav-On Drugs,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), the Court held that although a state cannot require a foreign corporation to obtain a certificate of authority to do business within the state if the corporation's activities are wholly interstate,

> it is equally well settled that if [the corporation] is engaged in intrastate as well as interstate aspects [of its business] the state can require it to get a certificate of authority to do business. In such a situation, [the corporation] could not escape state regulation merely because it is also engaged in interstate commerce.

*Id.* at 279, 81 S.Ct. at 1318. In *Eli Lilly* a drug manufacturer which sold goods to wholesalers within New Jersey for subsequent sale in interstate commerce also engaged in service and promotional activities aimed at ultimate consumers of its products who lived in New Jersey. *Id.* The Court held that the company was engaged in intrastate as well as interstate trade and, as a result of this local aspect of its business, it could be subjected to state regulation. *Id.* at 284, 81 S.Ct. at 1321.

■ The plaintiff in the case at bar engaged in substantial intrastate activities. His company performs services for its clients within Connecticut by contacting Connecticut debtors by phone and mail and attempting to collect outstanding debts owed to his clients. The fact that this service is performed exclusively by mail and phone does not alter the fact that it is a service performed intrastate.

> [So] long as the interstate trader's conduct has a "connection in fact" with a state producing an effect within a state, the interstate character of his conduct is only an element of the *Pike* interest-balancing analysis.

*Aldens, Inc. v. LaFollette,* 552 F.2d 745, 750 (7th Cir.), *cert. denied,* 434 U.S. 880, 98 S.Ct. 236, 54 L.Ed.2d 161 (1977). The plaintiff's activities in this case have a substantial impact within Connecticut. The manner in which he conducts his business affects the economic, psychological and social well-being of numerous Connecticut citizens. As the United States Congress has declared,

> abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

15 U.S.C. § 1692. Congress has recognized that the states have an interest in regulating consumer debt collection practices as well as the federal government. 15 U.S.C. § 1692n.[3] Since Congress has recognized the intrastate as well as interstate nature of the plaintiff's business this court is not

---

**3.** The federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.,* although it provides detailed federal regulation of consumer debt collection agencies explicitly states that consistent state legislation is not preempted by the federal statute. 15 U.S.C. § 1692n.

Section 1692n also resolves the supremacy clause issue which was raised by plaintiff's complaint but not argued or briefed.

inclined to come to any other conclusion. At any event, it is clear that the plaintiff's activities in Connecticut have intrastate or local effects as well as interstate aspects.

2. *The Constitutionality of Conn.Gen. Stat. § 42–127a(a) under Pike v. Bruce Church*

■ Applying the standard of *Pike v. Bruce Church*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970),[4] the first question which must be resolved is whether Conn.Gen.Stat. § 42–127a(a) discriminates against out-of-state or interstate commerce. A straightforward reading of the statute exhibits no preference or protection of any sort for local as opposed to non-resident collection agencies:

(a) No person shall act within this state as a consumer collection agency, unless such person holds a license then in force from the commissioner authorizing him to so act. A consumer collection agency is acting within this state if it

(1) has its place of business located within this state;
(2) has its place of business located outside this state and collects from consumer debtors who reside within this state for creditors whose place of business is located within this state; or
(3) has its place of business located outside this state and regularly collects from consumer debtors who reside within this state for creditors whose place of business is located outside this state.

Conn.Gen.Stat. § 42–127a. Local agencies and out-of-state agencies serving local creditors are subject to the licensing requirement regardless of the extent of their collection activities within Connecticut. Out-of-state agencies collecting on behalf of out-of-state creditors, on the other hand, are subject to the state's regulation only if they regularly collect from Connecticut consumer debtors. Limiting the reach of the statute to such regular contact with the state ensures that (1) the statute embraces only those foreign agencies which have suf-

ficient contacts with Connecticut to sustain the state's regulation under the due process clause, *see International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and (2) that the state has a strong enough interest in the activity being regulated to justify the burden being placed upon interstate businesses, *see Pike v. Bruce Church*, 397 U.S. at 142, 90 S.Ct. at 847.

Conn.Gen.Stat. § 42–127a, thus, makes a distinction between intrastate and out-of-state agencies only to the extent required to assure that the statute does not run afoul of the United States Constitution. It imposes equal or greater responsibilities upon domestic collection agencies than it does on out-of-state agencies. I am not confronted, therefore, with a case of "local favoritism or protectionism" imposing disproportionate burdens on out-of-state businesses. *See Lewis v. B. T. Investment Managers, Inc.*, 447 U.S. 27, 42–43, 100 S.Ct. 2009, 2018–2019, 64 L.Ed.2d 702 (1980).

Since this statute does not discriminate against interstate commerce, the plaintiff's commerce clause challenge must be resolved by balancing the state's interest against the burden on interstate commerce. *Pike v. Bruce Church*, 397 U.S. at 142, 90 S.Ct. at 847. This inquiry requires consideration of three factors:

(1) whether the legislation serves a legitimate local public interest; (2) whether the legislation has only an incidental effect on interstate commerce; and (3) whether the local public interest justifies the statute's impact on interstate commerce.

*New England Accessories Trade Ass'n v. Browne*, 502 F.Supp. 1245, 1255 (D.Conn. 1980).

In this case the legitimacy of the state's interest is clear. Congress has itself recognized the importance of the states' interest by explicitly providing that the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, does not preempt the field and that the states, therefore, can regulate

---

**4.** *See* page 886 *supra.*

consumer collection agencies as long as their regulation is consistent with the federal legislation. 15 U.S.C. § 1692n.[5] In the plaintiff's case, numerous complaints have been made by Connecticut residents to the Banking Commission concerning the plaintiff's company. These facts convincingly demonstrate the significant local public interest which the Commissioner has in restraining fraudulent or unfair trade practices by consumer collection agencies. Reasonable and non-discriminatory legislation aimed at preventing such practices clearly serves an important and legitimate local public interest.

The extent of the burden imposed upon interstate commerce by Conn.Gen.Stat. § 42–127a(a) has been the subject of a great deal of argument by the parties in this case. The plaintiff argues that the burden is excessive on primarily two grounds. First, he contends that since his company is a national debt collection agency he will be subjected to a licensing requirement in many of the 50 states if this court sustains Connecticut's licensing statute. His second argument is that, in order to obtain a license from the Connecticut Banking Commission he must change significantly the manner in which he maintains his books and records. The defendant contends that the burdens actually imposed upon the plaintiff's company are minimal and justified by the public interests served by this regulation.

■ The plaintiff's contention that this court must consider the cumulative burden imposed upon a national collection agency, such as the plaintiff's company, by the combined regulation of the several states and the federal government reveals a misunder-

standing of the reach of commerce clause protection. He apparently views the commerce clause as a limitation upon the states' power to burden interstate businesses. In fact, the purpose of the commerce clause is to protect interstate commerce itself, *i.e.,* the free flow of goods through interstate markets. *See, e.g., Allenberg Cotton v. Pittman,* 419 U.S. at 29, 95 S.Ct. at 265. As the Supreme Court has recently stated, the commerce clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulation." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2214–15, 57 L.Ed.2d 91 (1978). A company which seeks to do business in all 50 states must bear the cost of doing business in those states. That cost includes complying with all applicable national and state laws. Congress has recognized that this is a subject matter on which the states may legislate despite the existence of federal regulation. 15 U.S.C. § 1692n. It has implicitly decided, therefore, that whatever burden on interstate commerce may result from this combination of state and national regulation is justified by the states' interest in regulating this industry.

■ In any event, the actual burdens imposed upon collection agencies subject to Conn.Gen.Stat. § 42–127a are minimal. The state charges all consumer collection agencies an investigation fee of $50 and a licensing fee of $200. These fees are reasonably related to the costs of investigating, licensing and regulating all licensed agencies. They are "sufficiently small fairly to represent the cost of governmental supervision . . . ." *Union Brokerage Co. v. Jensen,* 322 U.S. 202, 210, 64 S.Ct. 967, 972, 88 L.Ed.

---

**5.** Where Congress has specifically endorsed state regulation, it is possible to conclude that a court need not weigh the state's local interest against the burden on interstate commerce since, in effect, Congress has already done so. *Aldens, Inc. v. Packel,* 524 F.2d 38, 50 (3d Cir. 1975), *cert. denied sub nom. Aldens v. Kane,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). The Supreme Court, however, has indicated that a standard non-preemption clause, such as section 1692n, is not to be construed as an affirmative grant of power to the states to

burden interstate commerce in the absence of an express statement of congressional intent to sustain state legislation from attack under the commerce clause. *New England Power Co. v. New Hampshire,* —— U.S. ——, ——–——, 102 S.Ct. 1096, 1100–02, 71 L.Ed.2d 188 (1982). Although I will not interpret section 1692n as a resolution of the commerce clause issue in this case, it is clearly relevant to several aspects of commerce clause analysis since it represents a precise congressional recognition of the importance of state regulation in this field.

1227 (1944). The requirement that a $5,000 bond be posted is more than reasonable. A company which utilizes a cash basis accounting system is not required to convert to or keep additional records based upon an accrual basis accounting system. It is the policy of the Banking Commission to require a collection agency to produce its records and books only in the event that formal proceedings are instituted as a result of a complaint filed by a creditor or debtor. Otherwise, the provision of a financial statement will satisfy the requirement that the Commissioner is entitled to examine a licensee's books and records "as often as he deems necessary." Conn.Gen. Stat. § 42–127a(b). Requiring a company to provide a financial statement is a very minimal burden. Where formal proceedings have been brought against a collection agency the state's interest clearly rises to the extent necessary to justify the production of the company's actual books and records. In summary, whatever minimal burden is imposed upon collection agencies by Connecticut's licensing process is more than justified by the state's interest in regulating the practices of these companies. At any rate, the plaintiff has failed to show how the responsibilities imposed upon collection agencies by Conn.Gen.Stat. § 42–127a in any fashion burdens the interstate credit market.

I conclude, therefore, that whatever minimal burdens, if any, Conn.Gen.Stat. § 42–127a may impose upon interstate commerce when it is applied to a national consumer debt collection agency such as the plaintiff's are more than justified by the considerable state interests served by this regulation. Requiring an out-of-state agency which regularly collects from debtors within the state to obtain a license from the State Banking Commissioner is a reasonable component of Connecticut's regulatory scheme. In view of Congressional recognition of the importance of the states' interest in regulating this industry, and the fact that Conn. Gen.Stat. § 42–127a(a) does not substantially burden interstate commerce, the plaintiff's commerce clause challenge must fail.

## C. The Due Process Clause

The plaintiff also claims that his company has insufficient contact with the State of Connecticut to allow the state to regulate its activities consistent with the requirements of due process.

Due process limitations upon a state's power to exercise jurisdiction over non-residents are usually discussed in the context of challenges to a state court's assumption of jurisdiction over the persons of out-of-state defendants. *E.g., International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is true, as the plaintiff states, that the due process clause also limits the power of a state to subject a non-resident to regulation under its substantive laws. The plaintiff, however, contends that a more stringent test applies in the later situation. He cites state authority to the effect that

> the question of whether a foreign corporation is transacting business so as to require a certificate of authority must be determined on the complete factual picture presented in each case, and ... the corporation's activities must be more substantial than those which would suffice to subject it to service of process.

*Sawyer Savings Bank v. American Trading Co.*, 176 Conn. 185, 190, 405 A.2d 635 (1978) (citations omitted). In that case, however, the Connecticut Supreme Court was merely interpreting a statutory test of what constitutes the transaction of business within the state under state law. *Id.* at 188, 405 A.2d 635. The case does not support the plaintiff's position that due process requires more contact with a state to sustain a state's substantive regulatory jurisdiction than to support a state court's *in personam* jurisdiction.

As pointed out by Justice Douglas' concurring opinion in *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), there may be some distinction between the constitutional standard applied in a case of substantive state regulation and that applicable to a question of a court's *in personam* jurisdiction:

[A creditor's] ability to sue [an out-of-state company in Virginia] is not necessarily the measure of Virginia's power to regulate .... It is the nature of the state's action that determines the kind or degree of activity in the state necessary for satisfying the requirements of due process. What is necessary to sustain a tax or to maintain a suit by a creditor ... is not in my view determinative when the state seeks to regulate ... within its borders.

*Id.* at 653, 70 S.Ct. at 932. But whether or not the limitations of due process as applied to a state court's ability to assert *in personam* jurisdiction are equated with those applicable to the power of the state to apply its substantive regulatory jurisdiction over non-residents, as can be implied from the majority opinion in *Travelers Health Ass'n v. Virginia*, 339 U.S. at 648, 70 S.Ct. at 929, the requirements of due process are certainly met in this case.

In addressing a due process challenge to a state's assertion of regulatory jurisdiction over out-of-state discount securities brokers Judge Merhige of the Eastern District of Virginia stated that

[t]he determination as to the state's power, under the due process clause, to regulate the activities of non-residents is made by reference both to the extent of the non-resident's contact with the state, and to the nature and extent of the state's interest in exercising its authority.

*Underhill Assoc., Inc. v. Coleman*, 504 F.Supp. 1147, 1150 (E.D.Va.1981). The plaintiffs in the *Underhill* case had an even stronger due process argument than the plaintiff at bar because there the securities brokers did not themselves initiate contact with state residents. Here it is the plaintiff who initiates contact. In both cases the sole means of contact between the out-of-state companies and state residents was by phone and mail. I, therefore, find Judge Merhige's reasoning persuasive and follow his lead in concluding that

[f]or due process purposes, it suffices that plaintiffs' activities within the state pro-

duce effects within [Connecticut]—effects which the state has an interest in regulating.

*Id.*

■ The plaintiff in this case contacts an average of approximately 3,000 Connecticut debtors annually. The plaintiff stipulated at the administrative hearing before the state agency that his company contacts Connecticut debtors regularly and with some frequency. Such regular conduct of business within Connecticut produces substantial local effects. *See* 15 U.S.C. §§ 1692, 1692n. The state's interest in subjecting plaintiff's company to its licensing regulation, therefore, is sufficient to sustain the statute against both a commerce clause and a due process challenge.

### IV. CONCLUSION

For the reasons stated above, I hereby grant the defendant's motion for summary judgment and dismiss the case. It is

SO ORDERED.