ELI LILLY & CO. *v.* SAV-ON-DRUGS, INC., ET AL.

No. 203. Argued March 20–21, 1961.—Decided May 22, 1961.

*Everett I. Willis* argued the cause for appellant. With him on the briefs were *Joseph H. Stamler* and *Melvin P. Antell.*

*Samuel M. Lane* argued the cause for Sav-On-Drugs, Inc., appellee. With him on the brief were *Vincent P. Biunno* and *Claus Motulsky.*

*David M. Satz, Jr.,* First Assistant Attorney General of New Jersey, argued the cause for the State of New Jersey, Intervenor-Appellee. With him on the briefs were *David D. Furman,* Attorney General, and *Elias Abelson* and *Murry Brochin,* Deputy Attorneys General.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellant Eli Lilly and Company, an Indiana corporation dealing in pharmaceutical products, brought this action in a New Jersey state court to enjoin the

appellee Sav-On-Drugs, Inc., a New Jersey corporation, from selling Lilly's products in New Jersey at prices lower than those fixed in minimum retail price contracts into which Lilly had entered with a number of New Jersey drug retailers. Sav-On had itself signed no such contract but, under the New Jersey Fair Trade Act, prices so established become obligatory upon nonsigning retailers who have notice that the manufacturer has made these contracts with other retailers.[1] Sav-On moved to dismiss this complaint under a New Jersey statute that denies a foreign corporation transacting business in the State the right to bring any action in New Jersey upon any contract made there unless and until it files with the New Jersey Secretary of State a copy of its charter together with a limited amount of information about its operations [2] and obtains from him a certificate authorizing it to do business in the State.[3]

Lilly opposed the motion to dismiss, urging that its business in New Jersey was entirely in interstate commerce and arguing, upon that ground, that the attempt to require it to file the necessary information and obtain a certificate for its New Jersey business was forbidden by the Commerce Clause of the Federal Constitution. Both parties offered evidence to the Court in the nature of affidavits as to the extent and kind of business done by Lilly with New Jersey companies and people. On this

---

[1] N. J. Rev. Stat. 56:4-6. The legality of such arrangements insofar as the antitrust laws are concerned was provided for by the McGuire Act, 66 Stat. 632, 15 U. S. C. § 45 (a).

[2] The information required is: (1) the amount of the corporation's authorized capital stock; (2) the amount of stock actually issued by the corporation; (3) the character of the business which the corporation intends to transact in New Jersey; (4) the principal office of the corporation in New Jersey; and (5) the name and place of abode of an agent upon whom process against the corporation may be served. N. J. Rev. Stat. 14:15-3.

[3] N. J. Rev. Stat. 14:15-4.

evidence, the trial court made findings of fact and granted Sav-On's motion to dismiss, stating as its ground that "the conclusion is inescapable that the plaintiff [Lilly] was in fact doing business in this State at the time of the acts complained of and was required to, but did not, comply with the provisions of the Corporation Act." [4] On appeal to the Supreme Court of New Jersey, this constitutional attack was renewed and the State Attorney General was permitted to intervene as a party-defendant to defend the validity of the statute. The State Supreme Court then affirmed the judgment upholding the statute, relying entirely upon the opinion of the trial court. [5] We noted probable jurisdiction to consider Lilly's contention that the constitutional question was improperly decided by the state courts. [6]

The record shows that the New Jersey trade in Lilly's pharmaceutical products is carried on through both interstate and intrastate channels. Lilly manufactures these products and sells them in interstate commerce to certain selected New Jersey wholesalers. These wholesalers then sell the products in intrastate commerce to New Jersey hospitals, physicians and retail drug stores, and these retail stores in turn sell them, again in intrastate commerce, to the general public. It is well established that New Jersey cannot require Lilly to get a certificate of authority to do business in the State if its participation in this trade is limited to its wholly interstate sales to New Jersey wholesalers. [7] Under the authority of the so-called "drummer" cases, such as *Robbins* v. *Shelby*

---

[4] 57 N. J. Super. 291, 302, 154 A. 2d 650, 656.

[5] 31 N. J. 591, 158 A. 2d 528.

[6] 364 U. S. 860.

[7] See, *e. g.*, *Crutcher* v. *Kentucky*, 141 U. S. 47; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197.

*County Taxing District,*[8] Lilly is free to send salesmen into New Jersey to promote this interstate trade without interference from regulations imposed by the State. On the other hand, it is equally well settled that if Lilly is engaged in intrastate as well as interstate aspects of the New Jersey drug business, the State can require it to get a certificate of authority to do business.[9] In such a situation, Lilly could not escape state regulation merely because it is also engaged in interstate commerce. We must then look to the record to determine whether Lilly is engaged in intrastate commerce in New Jersey.

The findings of the trial court, based as they are upon uncontroverted evidence presented to it, show clearly that Lilly is conducting an intrastate as well as an interstate business in New Jersey:

> "The facts are these: Plaintiff maintains an office at 60 Park Place, Newark, New Jersey. Its name is on the door and on the tenant registry in the lobby of the building. (The September 1959 issue of the Newark Telephone Directory lists the plaintiff, both in the regular section and in the classified section under 'Pharmaceutical Products,' as having an office at 60 Park Place, Newark.) The lessor of the space is plaintiff's employee, Leonard L. Audino, who is district manager in charge of its marketing division for the district known as Newark. Plaintiff is not a party to the lease, but it reimburses Audino 'for all expenses incidental to the maintenance and operation of said office.' There is a secretary in the office,

---

[8] 120 U. S. 489. The *Robbins* case has been followed in a long line of subsequent decisions by this Court. A partial list of these cases is set out in *Memphis Steam Laundry* v. *Stone,* 342 U. S. 389, 392–393, n. 7.

[9] See, *e. g., Railway Express Co.* v. *Virginia,* 282 U. S. 440. Cf. *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, especially at 211–212.

who is paid directly by the plaintiff on a salary basis. There are 18 'detailmen' under the supervision of Audino. These detailmen are paid on a salary basis by the plaintiff, but receive no commissions. Many, if not all of them, reside in the State of New Jersey. Whether plaintiff pays unemployment or other taxes to the State of New Jersey is not stated. It is the function of the detailmen to visit retail pharmacists, physicians and hospitals in order to acquaint them with the products of the plaintiff with a view to encouraging the use of these products. Plaintiff contends that their work is 'promotional and informational only.' On an occasion, these detailmen, 'as a service to the retailer,' may receive an order for plaintiff's products for transmittal to a wholesaler. They examine the stocks and inventory of retailers and make recommendations to them relating to the supplying and merchandising of plaintiff's products. They also make available to retail druggists, free of charge, advertising and promotional material. When defendant opened its store in Carteret, plaintiff offered to provide, and did provide, announcements for mailing to the medical profession, without cost to defendant. The same thing occurred when defendant opened its Plainfield store." [10]

We agree with the trial court that "[t]o hold under the facts above recited that plaintiff [Lilly] is not doing business in New Jersey is to completely ignore reality." [11] Eighteen "detailmen," working out of a big office in Newark, New Jersey, with Lilly's name on the door and in the lobby of the building, and with Lilly's district manager and secretary in charge, have been regularly engaged

---

[10] 57 N. J. Super., at 298–299, 154 A. 2d, at 654.

[11] *Id.*, at 300, 154 A. 2d, at 655.

in work for Lilly which relates directly to the intrastate aspects of the sale of Lilly's products. These eighteen "detailmen" have been traveling throughout the State of New Jersey promoting the sales of Lilly's products, not to the wholesalers, Lilly's interstate customers, but to the physicians, hospitals and retailers who buy those products in intrastate commerce from the wholesalers. To this end, they have provided these hospitals, physicians and retailers with up-to-date knowledge of Lilly's products and with free advertising and promotional material designed to encourage the general public to make more intrastate purchases of Lilly's products. And they sometimes even directly participate in the intrastate sales themselves by transmitting orders from the hospitals, physicians and drugstores they service to the New Jersey wholesalers.

This Court had a somewhat similar problem before it in *Cheney Brothers Co.* v. *Massachusetts.*[12] In that case, the Northwestern Consolidated Milling Company of Minnesota had been conducting business in Massachusetts in a manner quite similar to that being used by Lilly in New Jersey—a number of wholesalers were buying Northwestern's flour in interstate commerce and selling it to retail stores in Massachusetts in intrastate commerce. Northwestern had in Massachusetts, in addition to any force of drummers it may have had to promote its interstate sales to the wholesalers, a group of salesmen who traveled the State promoting the sale of flour by Massachusetts wholesalers to Massachusetts retailers. These salesmen also solicited orders from the retail dealers and turned them over to the nearest Massachusetts wholesaler. Despite this substantial connection with the intrastate business in Massachusetts, Northwestern contended that its business was wholly in interstate commerce—a

---

[12] 246 U. S. 147.

contention that this Court disposed of summarily in the following words: "Of course this is a domestic business,—inducing one local merchant to buy a particular class of goods from another." [13]

Lilly attempts to distinguish the holding in the *Cheney* case on the ground that here its detailmen are not engaged in a systematic solicitation of orders from the retailers. It is true that the record in the *Cheney* case shows a more regular solicitation of orders than does the record here. But that difference is not enough to distinguish the cases. For the record shows that Lilly here, no less than Northwestern there, engages in a "domestic business,—inducing," as the Court said of Northwestern, "one local merchant to buy a particular class of goods from another." The fact that the business of "inducing" intrastate sales, as engaged in by Lilly, is primarily a promotional and service business which does not include a systematic solicitation of orders goes only to the nature of the intrastate business Lilly is carrying on, not to the question of whether it is carrying on an intrastate business.

Lilly also contends that even if it is engaged in intrastate commerce in New Jersey and can by virtue of that fact be required to get a license to do business in that State, New Jersey cannot properly deny it access to the courts in this case because the suit is one arising out of the interstate aspects of its business. In this regard, Lilly relies upon such cases as *International Textbook Co.* v. *Pigg*,[14] holding that a State cannot condition the right of a foreign corporation to sue upon a contract for the interstate sale of goods. We do not think that those cases are applicable here, however, for the present suit is not of that kind. Here, Lilly is suing upon a contract entirely

[13] *Id.*, at 155.
[14] 217 U. S. 91. See also *Furst* v. *Brewster*, 282 U. S. 493; *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197.

separable from any particular interstate sale and the power of the State is consequently not limited by cases involving such contracts.

What we have said would be enough to dispose of this case were it not for the contention that the question whether Lilly is engaged in intrastate commerce in New Jersey is not properly before us. This contention is based upon Lilly's interpretation of the decision of the New Jersey court as resting upon the assumption that Lilly has been engaged in interstate commerce only. We cannot accept that contention because, in the first place, it rests upon a completely erroneous interpretation of the New Jersey court's opinion. That court was called upon to decide whether appellant was "transacting business" in New Jersey within the meaning of the statute which requires the registration of foreign corporations. In deciding that question, the court relied upon the facts set out in the affidavits with regard to the various local activities of Lilly as summarized in the findings quoted above. The only reasonable inference from these findings is that the trial court interpreted the phrase "transacting business" in the New Jersey statute to mean transacting local intrastate business and concluded from the facts it found that Lilly was transacting such business. This conclusion is reinforced by a subsequent New Jersey opinion that distinguishes the decision in this case on precisely that ground.[15]

But even if the opinion of the court below should, as is urged, be interpreted as resting upon the mistaken belief that appellant could be required to register, even though it transacted no business whatever in New Jersey except interstate business, we think it would still be necessary to affirm the decision of that court on the record presently before us. That record clearly shows that Lilly

---

[15] *United States Time Corp.* v. *Grand Union Co.*, 64 N. J. Super. 39, especially at 45–46, 165 A. 2d 310, 313–314.

was, as a matter of fact, engaged in local intrastate business in New Jersey through the employees it kept there to induce retailers, physicians and hospitals to buy Lilly's products from New Jersey wholesalers in intrastate commerce. So even if the state court had rested its conclusions on an improper ground, this Court could not, in view of the undisputed facts establishing its validity, declare a solemn act of the State of New Jersey unconstitutional. The record clearly supports the judgment of the New Jersey Supreme Court and that judgment must therefore be and is

*Affirmed.*

MR. JUSTICE HARLAN, concurring.

On the premise that New Jersey cannot impede an out-of-state seller's access to the state market,[1] the difficult issue presented in this case is how much more than shipping its goods into New Jersey. Lilly may do within the State without subjecting itself to the requirements and sanctions of New Jersey's licensing laws. In joining the Court's opinion, I think some further observations appropriate.

It is clear that sending "drummers" into New Jersey seeking customers to whom Lilly's goods may be sold and shipped, *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, and suing in the state courts to enforce contracts for sales from an out-of-state store of goods,

---

[1] Because I am of the view that Eli Lilly has engaged in "local business" in New Jersey, there is no need now to consider whether a wholly interstate business enjoys the same degree of immunity from state licensing provisions when the state requirement is regulatory as it does when the state requirement is purely a tax measure. Compare *California* v. *Thompson*, 313 U. S. 109, and *Union Brokerage Co.* v. *Jensen*, 322 U. S. 202, with *Nippert* v. *Richmond*, 327 U. S. 416, and *Spector Motor Service, Inc.*, v. *O'Connor*, 340 U. S. 602; and see Powell, Vagaries and Varieties in Constitutional Interpretation, 172–176, 186–187.

*International Textbook* v. *Pigg,* 217 U. S. 91, are both so intimately connected with Lilly's right to access to the local market, free of local controls, that they cannot be separated off as "local business" even if they are conducted wholly within New Jersey. However, I do not think that the systematic promotion of Lilly's products among local retailers and consumers who, as Lilly conducts its affairs, can only purchase them from a New Jersey wholesaler bears the same close relationship to the necessities of keeping the channels of interstate commerce state-unburdened. I believe that New Jersey can treat as "local business" such promotional activities, which are pointed at and result initially in local sales by Lilly's customers, and not in direct sales from its own out-of-state store of goods.[2] Three factors, particularly, persuade me to that view.

[2] There can be no doubt that the "promotional and informational" activities of Lilly in New Jersey were specifically aimed at securing retail and consumer trade for its local wholesalers. One of the two affidavits submitted by Lilly in opposition to the motion below states:

"The primary purpose of said employees [stationed in New Jersey] is to acquaint retail pharmacists, physicians, and hospitals with the products of Eli Lilly and Company so that the said retail pharmacists, physicians, and hospitals will order Lilly products from local wholesale distributors."

The other such affidavit states:

"It is the function of said detail men [Lilly employees stationed in New Jersey] only to visit retail pharmacists, physicians and hospitals and to acquaint same with the various products of Eli Lilly and Company, with a view to encouraging the purchase and use of said retail products by such institutions and professional men. The work of the detail men is promotional and informational only. They do not accept orders under any circumstances for the purchase of Eli Lilly and Company products. Products of Eli Lilly and Company are sold to retailers in the State of New Jersey by wholesale distributors. On occasion, detail men of Eli Lilly and Company may, as a service to the retailer, receive an order for Eli Lilly and Company products only for the purpose of transmitting same to the

*First:* A licensing requirement, as applied in this situation, does not deny Lilly a significant opportunity to reach New Jersey customers. Appellant remains free, and is constitutionally entitled to remain free, to solicit purchases directly by New Jersey retailers and consumers or, alternatively, to rely on its wholesalers to develop the New Jersey market. Thus, Lilly is not in the position of the manufacturer with whose protection Mr. Justice Bradley was concerned when, in *Robbins v. Shelby County, supra,* at 494, he asked: "How is a manufacturer, or a merchant, of one state, to sell his goods in another state, without, in some way, obtaining orders therefor? Must he be compelled to send them at a venture, without knowing whether there is any demand for them?"

*Second:* Were Lilly, for a distinct consideration, to enter into an arrangement with its New Jersey wholesalers to promote or solicit business within the State for their account, I would suppose it scarcely doubtful that such an endeavor would constitute a local incident subject to the State's licensing power, even though the ultimate purpose and effect of the arrangement itself were also to enhance Lilly's own interstate business. I do not see why New Jersey must treat differently Lilly's present activities, which in fact redound both to the wholesalers' benefit, by lessening the need for promotional effort and expense on their part, and to Lilly's profit, in the form of increased orders from wholesalers. See *Cheney Brothers v. Massachusetts,* 246 U. S. 147; [3] cf. *Norton Co. v.*

---

wholesaler. Orders so received and transmitted are then subject to acceptance or rejection by the wholesaler."

To the same effect are the findings of the state court which are set forth in this Court's opinion. *Ante,* p. 279.

[3] I recognize that the force of the *Cheney Brothers* case, at least in the field of state income taxation, has been impaired by the Act of September 14, 1959, Pub. L. 86–272, 73 Stat. 555, which was passed by

*Department of Revenue,* 340 U. S. 534, 536, 537–539. A different constitutional result is not indicated by the circumstance that no consideration, other than the purchase price for goods bought, is paid Lilly by the wholesalers and that the benefit to Lilly from such local service comes from the resulting increase in interstate sales. The essential point is that Lilly's New Jersey activities were "wholly separate from interstate commerce, involved no question of the delivery of property shipped in interstate commerce or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated." *Browning* v. *Waycross,* 233 U. S. 16, 22–23.[4]

*Third:* I cannot agree that the effect of the decision in this case "is to repudiate the whole line of 'drummer' cases." We have not been referred to any case in which

the Congress in response to our decision in *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450. Even so, it should be observed that the statute, which immunizes from the reach of state income taxation a foreign concern's intrastate solicitation of orders "for the benefit of a prospective [interstate] customer," does not include within such immunity situations where the foreign seller maintains a local office for the purpose of such solicitation. See § 101 (c) of the statute and 105 Cong. Rec. 16469–16477. Lilly maintains an office in New Jersey in connection with its promotional activities. Reliance on the *Northwestern Cement* opinion's characterization of activities similar to those of Lilly as being "exclusively in furtherance of interstate commerce" seems to me to be stretching too far a casual reference which was quite unnecessary to the issue decided by the Court in that case.

[4] In the *Browning* case an agent of an out-of-state seller of lightning rods, who was engaged in installing lightning rods, purchased in interstate commerce, for the customers of such seller, was held subject to a state tax on the occupation of erecting lightning rods, despite the fact that the contract for the purchase of such rods obligated the seller to install the rods at its own expense. The Court observed that "it was not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause." *Id.,* at p. 23.

an interstate seller has been granted an immunity from a state-license requirement where the seller has promoted or participated in transactions between a local vendor and a local purchaser involving goods already within the State. Cf. *Wagner* v. *City of Covington,* 251 U. S. 95. The only aspect of the present case that resembles the "drummer" cases is the fact that Lilly's promotion of local sales ultimately serves to increase *its interstate sales.* To treat this factor as bringing the present situation within the drummer cases would, in my view, be substantially to extend the reach of those cases. I am not prepared to subscribe to such an extension at the expense of state power to regulate the promotion of sales of goods owned and located within the State when the countervailing federal considerations are as thin as they seem to me to be here, and when the interstate seller remains free to enjoy the immunities of interstate commerce by simply restricting its promotion to those who may buy from its own out-of-state store of goods.

Finally, while I am less clear than the rest of the majority that the state courts based their decision on a finding of "local business," I do not believe that any doubt on that score forecloses us from now sustaining the State on that ground where, as here, the facts leading to that conclusion are not in dispute. See *Nashville, C. & St. L. R. Co.* v. *Browning,* 310 U. S. 362.[5]

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE FRANK-FURTER, MR. JUSTICE WHITTAKER and MR. JUSTICE STEW-ART concur, dissenting.

The Court, with all deference, blends in this opinion three distinct lines of decisions which until today have

---

[5] I do not regard such cases as *Sprout* v. *South Bend,* 277 U. S. 163, and *Leloup* v. *Port of Mobile,* 127 U. S. 640, as controlling contrary authority in light of the opinion of the New Jersey Superior

been considered separate. They do indeed present different problems one from the other. I refer to our decisions concerning the power of a State (1) to tax an interstate enterprise, (2) to subject it to local suits, and (3) to license it.

(1) If New Jersey sought to collect from appellant a tax apportioned to some local business activity which it carries on in *that State,* I would see no constitutional objection to it. *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450. Such an apportioned tax imposed by New Jersey would have relation "to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred." *Wisconsin* v. *Penney Co.,* 311 U. S. 435, 444.

(2) If appellant were sued in New Jersey, I think its connections with that State have been sufficient to make it subject to the jurisdiction of the state courts (*International Shoe Co.* v. *Washington,* 326 U. S. 310), at least as to suits which reveal a "substantial connection" with the State. *McGee* v. *International Life Ins. Co.,* 355 U. S. 220. Cf. *Hanson* v. *Denckla,* 357 U. S. 235, 250–255.

(3) The present case falls in neither of those two categories. New Jersey demands that appellant obtain from it a certificate authorizing it to do business in the State, absent which she denies appellant access to her courts. The case thus presents the strikingly different issue—whether an interstate business can be subjected to a licensing system.

I put to one side cases such as *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, and *Rice* v. *Santa Fe Elevator*

Court which suggests that the state statute may apply only to constitutionally licensable local business. In this regard see the Superior Court's later opinion in *United States Time Corp.* v. *Grand Union Co.,* 64 N. J. Super. 39, 165 A. 2d 310.

*Corp.,* 331 U. S. 218, where the issue was whether a company doing business in the State was exempt from a regulation of this kind because Congress had subjected it to a licensing system.   I also put to one side *Railway Express Co.* v. *Virginia,* 282 U. S. 440, where a company, doing an intrastate* as well as an interstate express business, was required to obtain a certificate authorizing it to conduct an intrastate business.   The question here is whether a State can require a license for the doing of an interstate business.   The power to license the exercise of a federal right, like the power to tax it, is "the power to control or suppress its enjoyment." *Murdock* v. *Pennsylvania,* 319 U. S. 105, 112.   Soliciting interstate business has up to this day been on the same basis as doing an interstate business, so far as the protection of the Commerce Clause is concerned.   It has usually been argued that soliciting interstate business is a "local activity" that can be licensed by a State or on which a State may lay a privilege tax.   That was the argument in *Nippert* v. *Richmond,* 327 U. S. 416, 420; *Memphis Steam Laundry* v. *Stone,* 342 U. S. 389, 392.   We rejected it, pointing out that in the long line of cases beginning with *Robbins* v. *Shelby County,* 120 U. S. 489, "this Court has held that a tax imposed upon the solicitation of interstate business is a tax upon interstate commerce itself."   342 U. S., at 392–393.

What appellant's employees do in New Jersey is certainly no more than what a "drummer" for an interstate house does.   The record shows that petitioner's employees engage in the following activities in New Jersey:

> "It is the function of the detailmen to visit retail pharmacists, physicians and hospitals in order to acquaint them with the products of the plaintiff with a view to encouraging the use of these products.

---

*In that case, the express company picked up and delivered articles within Virginia as well as shipped other articles into and out of the State.

> Plaintiff contends that their work is 'promotional and informational only.' On an occasion, these detailmen, 'as a service to the retailer,' may receive an order for plaintiff's products for transmittal to a wholesaler. They examine the stocks and inventory of retailers and make recommendations to them relating to the supplying and merchandising of plaintiff's products. They also make available to retail druggists, free of charge, advertising and promotional material. When defendant opened its store in Carteret, plaintiff offered to provide, and did provide, announcements for mailing to the medical profession, without cost to defendant. The same thing occurred when defendant opened its Plainfield store."

In *Robbins* v. *Shelby County, supra,* p. 491, the "drummer" who failed to take out a license from the State was doing the following:

> "Sabine Robbins . . . a citizen and resident of Cincinnati, Ohio, . . . was engaged in the business of drumming in the Taxing District of Shelby County, Tenn.; *i. e.,* soliciting trade by the use of samples for the house or firm for which he worked as a drummer, said firm being the firm of 'Rose, Robbins & Co.,' doing business in Cincinnati, and all the members of said firm being citizens and residents of Cincinnati, Ohio."

In this case, appellant's employees within the State were engaged solely in the "drumming up" of appellant's interstate trade. They did this, not by direct solicitation of the interstate buyers, but by contacts with the customers of the buyers. Such activities were said to be "exclusively in furtherance of interstate commerce" only two years ago in *Northwestern Cement Co.* v. *Minnesota, supra,* 452, 455. Yet today the Court finds these activities to be separable from appellant's interstate business;

appellant is "inducing" sales, not "soliciting" them. It is not a distinction I can accept.

We deal here with a general state regulatory measure. Under our precedents, access to state courts cannot be barred to "a foreign corporation merely coming into [the State] to contribute to or to conclude a unitary interstate transaction." *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, 211. Yet that is what New Jersey claims the power to do. We have struck down similar state requirements which barred access to state courts to recover the purchase price on an interstate contract, *International Textbook Co.* v. *Pigg,* 217 U. S. 91, to recover for the breach of an interstate contract of sale, *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, and to attack as fraudulent the transfer of assets of a domestic debtor, *Buck Stove Co.* v. *Vickers,* 226 U. S. 205. Surely, the cause of action here asserted does not involve a state interest more compelling than the protection of domestic debtors or the stability of title to domestic lands.

The Court places special reliance on *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147, 155, where Massachusetts' imposition of an "excise tax" on the Northwestern Consolidated Milling Company was upheld. There the entire activity of the foreign corporation in the State was the direct solicitation of orders *for local wholesalers.* Here the *dominant* activity is nothing more than advertising and public relations. These are the minimum activities in which every "drummer" for an out-of-state concern engages.

To hold that New Jersey can license appellant in this case is to repudiate the whole line of "drummer" cases.

This case on its own may do little injury. But it provides the formula whereby a State can stand over the channels of interstate commerce in a way that promises to do great harm to the national market that heretofore the Commerce Clause has protected.