MOYGLARE STUD FARM, LTD., Plaintiff,

v.

DUE PROCESS STABLE, INC. and Robert E. Brennan, Defendants.

No. 82 Civ. 8472 (WCC).

United States District Court, S.D. New York.

Sept. 12, 1983.

Sullivan & Cromwell, New York City, for plaintiff; Richard H. Klapper, New York City, of counsel.

Arnoff & Merin, P.C., New York City, Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for defendants; Norman B. Arnoff, New York City, Ronald J. Riccio, Joseph F. Lagrotteria, Newark, N.J., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Moyglare Stud Farm, Ltd. ("Moyglare"), an Irish corporation, initiated this diversity action seeking a declaratory judgment that defendants' revocation of a contract of sale is invalid. Defendants Due Process Stable, Inc. ("Due Process"), a New Jersey corporation, and Robert E. Brennan ("Brennan"), a New Jersey resident, previously moved to have the case dismissed on the ground of improper venue, or alternatively, to have the case transferred to the federal district court in New Jersey for the convenience of the parties and the witnesses. 28 U.S.C. § 1404(a). In an Opinion and Order dated April 13, 1983, familiarity with which is presumed, the Court denied defendants' motion in all respects.

Apparently undaunted by the Court's refusal to send plaintiff to New Jersey on venue grounds, defendants now seek dismissal of the complaint on the theory that Moyglare's failure to file a timely transaction report with the New Jersey authorities completely bars plaintiff from suit in *any* court, state or federal, on this cause of action. For the reasons stated below, this motion is also denied.

*Discussion*

In April of 1981, Moyglare sold to Due Process the thoroughbred racehorse, Lobsang II. Negotiations for the sale took place both in Florida between Moyglare's agent, John Jacobs ("Jacobs") and Brennan, Due Process's principal, and subsequently over the telephone between Jacobs in Florida and Due Process in New Jersey and New York. The sales contract calls for Due Process to pay $1 million for the horse, with $250,000 to be paid on delivery and $750,000 to be paid in three annual installments of $250,000 each plus interest on May 1 in each of the years 1982, 1983 and 1984. Pursuant to Due Process's request, the contract of sale specifies that New Jersey law shall apply to the contract and that Moyglare should deliver Lobsang II to defendants in New Jersey. Brennan signed the sale documents in his New York office on April 28, after which the documents were forwarded to Moyglare for execution in Ireland.

According to the complaint, Lobsang II was delivered to Due Process on April 30, 1981 and the first payment of $250,000 was made shortly thereafter. Nearly eighteen months later, however, on October 12, 1982, Brennan sent Moyglare a letter revoking its acceptance of Lobsang II on the ground that Due Process had recently discovered facts that caused it to believe that the horse had a serious, albeit concealed, leg injury prior to the sale. On December 20, 1982, Moyglare filed the instant action seeking a determination that the revocation of acceptance was ineffective and improper.

In the instant motion, defendants argue that because Moyglare, a corporation not registered or authorized to do business in New Jersey, did not promptly comply with the Corporation Business Activities Reporting Act ("the Act"), N.J.S.A. 14A:13–14 *et seq.*, plaintiff is now and forever barred from suit on the contract. The Act provides in pertinent part:

> Every foreign corporation which during any calendar or fiscal accounting year ending after December 31, 1973, carried on any activity, owned or maintained any property in this State, unless specifically exempted under Section 3 of this act, shall be required to file a notice of business activities report as hereinafter provided.

Activities or property maintenance in this State which require corporations to file this report are:

\* \* \* \* \* \*

(e) receiving payments from persons residing in this State, or businesses located in this State, aggregating in excess of $25,000.00 regardless of any other connections with this State; or

(f) the derivation of income from any source or sources within this State; . . . .

*Id.* 14A:13–15.

The sanction for noncompliance with the reporting requirement is contained in Section 14A:13–20, which states that failure to file a report creates a bar to the use of the state or federal courts in New Jersey. See *also National Utility Service v. Engineers, Inc.,* 80 Civ. 2205, slip op. at 4 (D.N.J. April 14, 1981) (mem.); *Associates Consumer Discount v. Bozzarello,* 149 N.J.Super. 358, 373 A.2d 1016, 1019 (App.Div.1977). Defendants accordingly contend that this Court, in exercising its diversity jurisdiction, must apply the law of New Jersey to bar plaintiff's suit here.

■ Moyglare accepts for purposes of this motion that, as stated in the contract, New Jersey law does apply to the Lobsang II sale. Plaintiff further acknowledges that when exercising its diversity jurisdiction a federal court must apply the door-closing statute imposed by the state law governing the case. See *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (affirming district court's dismissal of case pursuant to state door-closing statute on ground that where a party is barred from recovery in state court, he should likewise be barred in federal court). Indeed, while a federal court in a diversity case looks to the conflicts of law principles of the state in which it sits, the Second Circuit has made clear that under these circumstances a New York court would apply the New Jersey door-closing

statute as part of the law governing the controversy. *Cf. Weston Funding Corp. v. Lafayette Towers, Inc.,* 550 F.2d 710 (2d Cir.1977) (affirming dismissal of action on ground of *res judicata* where plaintiff, which had not complied with New Jersey licensing statute, had been precluded from suit in New Jersey by state door-closing statute).

■ This is not to say, however, that this Court must blindly apply an overly-restrictive state statute. To the contrary, the state door-closing statute must be examined for any undue burden it may place on interstate commerce, an effect which would render the statute unconstitutional under the Commerce Clause of the Constitution. See *Allenberg Colton Co. v. Pittman,* 419 U.S. 20, 34, 95 S.Ct. 260, 267, 42 L.Ed.2d 195 (1974) (Mississippi statute precluding foreign corporations not authorized to do business in state from recovering on contracts entered into in Mississippi violated Commerce Clause where those contracts were made in course of interstate or foreign commerce). While door-closing statutes such as New Jersey's may be applied in cases where the foreign plaintiff sues on an intrastate transaction, see *Eli Lilly & Co. v. Sav-on-Drugs,* 366 U.S. 276, 283, 81 S.Ct. 1316, 1320, 6 L.Ed.2d 288 (1960) a state may not refuse to honor and enforce contracts made for interstate or foreign commerce. *Allenberg, supra,* 419 U.S. at 34, 95 S.Ct. at 267.[1]

In the present case, however, the Court need not reach the constitutional issue since New Jersey has provided a savings clause to ameliorate the potentially harsh, and perhaps unconstitutional, bar to judicial relief. Subsection c of N.J.S.A. 14A:13–20 states:

The court in which the issues arise shall be granted the power to excuse the corporation for failure to file a report when due, and restore the right of access to the courts in this State. Such failure to file a

---

1. Defendants attempt to distinguish *Allenberg* on the ground that the interstate commerce exception to the bar created by door-closing statutes is applicable only if the particular contract was made for interstate or foreign commerce. That argument, however, hardly serves to limit the force of *Allenberg* here. The fact

that the sale of Lobsang II involved delivery of the horse in New Jersey to a New Jersey corporation does not magically transform the transaction into an intrastate matter where the horse was delivered from New York by a foreign corporation.

report shall be excusable where the court finds the corporation has sustained the burden of establishing that

(1) the failure to file a timely report was done in ignorance of the requirement to file, such ignorance was reasonable in all circumstances; and

(2) all taxes, interest and civil penalties due the State for all periods have been paid, or provided for by adequate security or bond approved by the director, before the suit may proceed.

■ The Court is satisfied that Moyglare, which has now filed a notice of business activities for the relevant periods, has satisfactorily demonstrated that its failure to submit a timely report was excusable. Moyglare has offered the affidavit of its Manager, J. Stan Cosgrove ("Cosgrove"). According to Cosgrove, Moyglare was contacted in April 1981 by Jacobs, an agent for the sale of thoroughbred racehorses, concerning the possibility of selling Lobsang II. Thereafter, Jacobs, on Moyglare's behalf, sought a purchaser for the horse. Moyglare, which conducts all of its business from Ireland, did not participate in the negotiations or the drafting of the sales documents, nor was it represented by counsel during the process. Although Due Process requested that New Jersey law be made applicable to the agreement, there was apparently no discussion concerning the requirement that Moyglare, to preserve its rights under the contract, must file a report with the New Jersey state authorities.

Moyglare further asserts, without contradiction, that it is not subject to New Jersey business taxes since the sale of Lobsang II was an isolated transaction and Moyglare does not otherwise conduct business in New Jersey. Under these circumstances, the Court cannot conclude that Moyglare should be precluded from asserting its claims against defendants. The statute was not designed to punish foreign entities for their ignorance of New Jersey law. Rather, [i]t is essentially an information gathering measure. Its clear purpose is to enable the Division of Taxation to obtain pertinent data from any foreign corporation which carries on an activity or owns or maintains property in this State but which has not obtained a certificate of authority to do business in New Jersey, to the end that a proper determination may be made as to whether such corporation is subject to any State tax.

*Associates Consumer Discount, supra,* 373 A.2d at 1018. This is not a case where plaintiff intentionally evaded New Jersey taxes or indeed even knowingly avoided the state reporting requirements. In the context of this interstate sale by a foreign corporation which transacts no other business in the state, Moyglare's ignorance of N.J.S.A. 14A:13–15 was clearly reasonable.

In arguing against the application of the savings clause to Moyglare, defendants rely on *National Utility Service,* which apparently is the only case to have construed the provision. That case involved an attempt by a New York corporate plaintiff to sue a New Jersey corporation for breach of contract in the District of New Jersey. The court granted a motion to dismiss on the ground that the plaintiff had failed to file a timely notice of business activities pursuant to N.J.S.A. 14A:13–15 and thus was precluded from suing under N.J.S.A. 14A:13–20. In rejecting the plaintiff's reliance on the savings clause, the court reasoned that:

NUS evidently renders services to customers in many states and so has the obligation to inform itself of such filing requirements. Under these conditions, it is not enough to say NUS was unaware of them without also showing that it made inquiry as through a New Jersey attorney, and was erroneously informed. The court finds NUS does not fall within the excusing provision of § 14A:13–20(c).

No. 80 Civ. 2205, *supra,* slip op. at 4.

This case is of course factually distinguishable from *National Utility Service* since plaintiff here is not in the business of providing services to customers across the country and therefore may have no reason to be familiar with the various state regulations. The more persuasive reason for concluding that *National Utility Service* does not dispose of the instant case, however, is the fact that such a strict interpretation of the savings provision calls into question the

constitutionality of the Act as applied to interstate transactions. See *Allenberg, supra,* 419 U.S. at 30–34, 95 S.Ct. at 265–267. The parties in *National Utility Service* apparently did not raise this issue, which was not considered by the court. The result in this case, on the other hand, protects the objective of New Jersey's efforts to obtain information necessary for tax purposes while at the same time avoiding an undue burden on interstate commerce.

Accordingly, for the reasons stated above, defendants' motion to dismiss the complaint is denied.