**CARBON PROCESSING COMPANY, Plaintiff-Appellant,**

v.

**LAPEYROUSE GRAIN CORP., Defendant-Appellee.**

No. 84–7706.

United States Court of Appeals, Eleventh Circuit.

Jan. 14, 1986.

Nicholas M. Devito, Cleveland, Ohio, for plaintiff-appellant.

Caine O'Rear, III, Mobile, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Lapeyrouse, an Alabama corporation, owned through a subsidiary a feed mill located in Aliceville, Alabama. Carbon Processing is an Ohio corporation that has never registered with the Secretary of State of Alabama to do business in Alabama and has never had any office or facilities in the state.

In February 1978 a representative of Carbon Processing made an unsolicited telephone call to William Powell, a representative of Lapeyrouse, and stated that Carbon Processing had a customer who was interested in purchasing the equipment at the Aliceville plant. Powell, on behalf of Lapeyrouse, indicated an interest in selling the equipment.

In April 1978 Alfred Vanderhill, another representative of Carbon Processing, met with Powell at the Aliceville plant. At that meeting a deal was struck between Carbon Processing and Lapeyrouse which provided that if Carbon Processing found a buyer for the mill equipment who would pay more than the minimum price of $270,000 set by Lapeyrouse, Carbon Processing would retain the excess as a finder's fee. The agreement was confirmed in a writing signed by both parties.

On two occasions in August 1978 Vanderhill brought potential buyers to the Aliceville plant to show the plant and equipment. In November 1979 he showed the plant to another potential buyer. Carbon Processing notified Lapeyrouse in writing of the names of at least two of these potential buyers and of their desire to inspect and asked that Carbon Processing be "protected" with respect to these potential purchasers.

In January 1979 Carbon Processing wrote Lapeyrouse sending quotations from two Ohio companies, one of which was S & W Mills, Inc. of Archibald, Ohio. The letter asked that Lapeyrouse "please protect us" on the quoted price.

About a month later, in February 1979, a representative of Carbon Processing and

Powell, as representative of Lapeyrouse, met with the representative of S & W Mills in Birmingham to discuss potential sale of the plant and equipment to S & W. S & W then inspected the plant in Aliceville. In mid-March 1979, S & W purchased the equipment and the mill building from Lapeyrouse for a total price of $260,000.

Carbon Processing sued, claiming a finder's fee on the S & W sale. A magistrate made recommendations after considering the pleadings, affidavits, depositions and briefs. He recommended a finding that the contract was intrastate rather than interstate, basing this partly upon the provision of the pretrial order that any agreement was made in Alabama. Because Carbon Processing had not qualified to do business in Alabama, the magistrate recommended that the suit was barred by § 10–2A–247, Code of Alabama (1975).[1] The pretrial order filed in the case expressly stated that if any agreement was made between the parties, it was made in Alabama. The order was prepared by counsel for Lapeyrouse after Carbon Processing's counsel failed to submit his part of the pretrial order as required. Almost a year after the pretrial order was filed, counsel for Carbon Processing moved to change the provision concerning the place the agreement was made to provide that any agreement, if made, was made in Alabama and Ohio. The district court denied this motion. The magistrate recommended summary judgment for Lapeyrouse, and the district court adopted his recommendation.

We decline to disturb the ruling of the district court refusing to amend the pretrial order. Nevertheless, even though the contract was made in Alabama, the district court erred in finding this an intrastate transaction that was subject to the bar of the Alabama statute. Applying the qualification statute to Carbon Processing impeded interstate commerce in contravention of the Commerce Clause of the Constitution.

There are no substantial intrastate aspects to Carbon Processing's business conducted in Alabama. Compare the intrastate activities that existed in *Eli Lilly & Co. v. Save-On-Drugs*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), and subjected Lilly to the New Jersey statute. Lilly had a district office in New Jersey with the company's name on the door and in the lobby and in the telephone directory. The office was under a district manager in charge of a marketing division for the Newark district. A secretary was maintained in the office. Eighteen detailmen, many residing in New Jersey, worked under the supervision of the district manager and traveled throughout the state. They visited consumers of Lilly's products, who bought them from wholesalers to whom Lilly sold interstate. They encouraged use, received orders, and transmitted them to wholesalers, examined stocks and inventories, and gave out promotional material. *SAR Mfg. Co., Inc. v. Dumas Bros. Mfg. Co.*, 526 F.2d 1283 (5th Cir.1976), is a similar case, though the intrastate activities were less intensive. Originally the plaintiff sold polyurethane foam to defendant and other Alabama concerns. Sales were consummated through orders placed by mail, telegraph or telephone with SAR's office in Houston, Texas. Then SAR changed its operation and leased a warehouse in Alabama where it received, stored, and did some processing on, foam for sale to defendant. Several employees worked at the warehouse, and two vehicles were maintained there. Plaintiff had salaried salesmen, each of whom spent about one-sixth of his time in Alabama. The Fifth Circuit found that, particularly with respect to the defendant, the marketing and supply functions of the plaintiff were localized enough to easily fall within the ambit of a series of transactions primarily intrastate, thus the qualifications statute did not

---

**1.** (a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement....

impede interstate commerce. There are no such localized functions by Carbon Processing.

This is not a case like *Allenberg Cotton Company, Inc. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), where intricate interstate marketing aspects of the cotton exchange business carried on by a corporation predominated over local contracts made in Mississippi. The Supreme Court held that the Mississippi qualifications statute impeded the nation-wide marketing system of cotton.

Carbon Processing is nothing more or less than a broker, operating out of its offices in Ohio, which attempted to find a purchaser for equipment located in Alabama and thereby to earn a finder's fee. It has no facilities in Alabama and no personnel or equipment based in Alabama. It did nothing in Alabama except enter into a brokerage contract and, on transitory visits to Alabama, bring potential purchasers to look at the equipment.

There are even fewer intrastate activities in this case than in *Foxco Industries Ltd. v. Fabric World, Inc.*, 595 F.2d 976 (5th Cir.1979). Foxco had no office or facility in Alabama but sold through a manufacturer's representative residing in the state and representing a number of companies. Foxco's sales manager made periodic trips to the state to meet with the manufacturers' rep and to obtain orders from two large retailers. The sales manager came to Alabama to secure the two orders out of which suit arose. The court held, based on Alabama cases considering the question, that Foxco's activities were only in interstate commerce and that the Alabama qualification statute had no application, since it only applies to one acting in intrastate commerce.

REVERSED.