BRYAN, Judge.
 

 The plaintiffs below, Henry Andrews (“Henry”) and Thomas Andrews (“Thomas”), individually and as executors of the estate of Willie Mae Andrews (“Willie Mae”), deceased, appeal from a judgment in favor of the defendant below, Central Petroleum, Inc. (“Central”). We affirm.
 

 Henry and Thomas are Willie Mae’s sons. Her will named them as her executors and left all of her property to them in equal shares. On December 19, 2009, Henry and Thomas, individually and as the executors of Willie Mae’s estate, sued Central, a Mississippi corporation. They sought a judgment declaring that a royalty deed executed and delivered by Willie Mae to Central on January 22,1998 (“the royalty deed”), which conveyed to Central Willie Mae’s royalty interest with respect to the mineral estate associated with certain land in Monroe County, was void because, they said, (1) Central was a foreign corporation that had not qualified to do business within Alabama when the royalty deed was executed and delivered on January 22, 1998,
 
 see
 
 § 10-2B-15.02(a), Ala.Code 1975,
 
 [1]
 
 (2) the royalty deed was unconscionable due to the unequal bargaining positions of the parties, and (3) the execution and delivery of the royalty deed were induced by fraud on the part of Central.
 

 After Central answered the complaint, the trial court held a bench trial on July 20, 2009. On September 16, 2009, the trial court entered a judgment declaring that the royalty deed was not void. On October 9, 2009, Henry and Thomas moved the trial court to alter, amend, or vacate the judgment because, they said, the trial court had erred in determining that § 10-2B-15.02(a) did not render the royalty deed void. Their motion was denied by operation of law on January 7, 2010.
 
 See
 
 Rule 59.1, Ala. R. Civ. P. Henry and Thomas then timely appealed to the supreme court on February 11, 2010. Thereafter, the supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Initially, we note that Henry and Thomas have not presented any argument regarding their claims that the royalty deed was void on the grounds of unconscionability or fraud in the inducement. Therefore, they have waived those claims.
 
 See Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003) (“ ‘When an appellant fails to properly argue an issue, that issue is waived and will not be considered.
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).’
 
 Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996).”).
 

 Thus, the only claim before us is Henry and Thomas’s claim that the royalty deed is void because Central was a foreign corporation that was not qualified to do business within Alabama when the royalty deed was executed and delivered on January 22, 1998. The parties agree that the
 
 *652
 
 facts material to that claim are undisputed. Those facts are as follows.
 

 In January 1998, Central was a Mississippi corporation that was engaged in the business of trading in oil and gas leases and royalty interests and participating in the drilling of oil and gas wells. Although it was not qualified to do business within Alabama, Central mailed from Mississippi approximately 45 to 50 solicitation letters addressed to the owners of mineral royalty interests in Monroe County, Alabama. The letters made an offer to buy the addressees’ mineral royalty interests and enclosed royalty deeds for the addressees to execute and return to Central if they accepted Central’s offer. The letters also enclosed drafts in payment for the addressees’ mineral royalty interests, which the addressees could negotiate if they accepted Central’s offer. One of the letters was addressed to Willie Mae. Willie Mae executed the royalty deed on January 22, 1998, in her attorney’s office in Monroe County and mailed it to Central. Willie Mae presented Central’s draft in the amount of $1,037 for payment at her bank in Alabama, and Central’s bank in Mississippi paid the draft. After receiving the executed royalty deed from Willie Mae, Central mailed it to the office of the Probate Judge of Monroe County (“the probate judge”) for recording. In addition to Willie Mae’s mineral royalty interest, Central acquired the mineral royalty interests of approximately 16 other persons in Monroe County in January and February 1998. Central does not have an office in Alabama and does not have any agents in Alabama.
 

 Because the facts material to this appeal are undisputed, we apply a de novo standard of review. In
 
 Rogers Foundation Repair, Inc. v. Powell,
 
 748 So.2d 869, 871 (Ala.1999), our supreme court stated:
 

 “ ‘ “[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts.’”
 
 Harris v. McKenzie,
 
 703 So.2d 309, 313 (Ala.1997) (quoting
 
 Craig Constr. Co., Inc. v. Hendrix,
 
 568 So.2d 752, 756 (Ala.1990)). The
 
 ore tenus
 
 ‘standard’s presumption of correctness has no application to a trial court’s conclusions on questions of law.’
 
 Beavers [v. Walker
 
 County], 645 So.2d [1365] at 1372 [ (Ala.1994) ]. ‘[0]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is
 
 de novo.’ Ex parte Graham,
 
 702 So.2d 1215, 1221 (Ala.1997).”
 

 Henry and Thomas argue that the trial court erred in determining that the royalty deed was not void because, they say, Central was engaging in intrastate commerce in the transaction with Willie Mae and, therefore, § 10-2B-15.02(a) rendered the royalty deed void. In response, Central argues that it was engaged in interstate commerce in its transaction with Willie Mae and, therefore, that the Commerce Clause of the United States Constitution (“the Commerce Clause”) barred § 10-2B-15.02(a) from applying to Central’s transaction with Willie Mae.
 

 In
 
 TradeWinds Environmental Restoration, Inc. v. Brown Bros. Construction, L.L.C.,
 
 999 So.2d 875, 878-79 (Ala.2008), the supreme court stated:
 

 “ ‘[Section 10-2B-15.02(a) ] is part of a statutory scheme that requires foreign corporations to receive a certificate of authority to do business in this State before transacting business here.’
 
 Green Tree Acceptance, Inc. v. Blalock,
 
 525 So.2d 1366, 1370 (Ala.1988). ‘Failure to secure such a certificate means that the foreign corporation cannot enforce a contract entered into in this State.’ 525 So.2d at 1370. ‘A foreign corporation that has not been author
 
 *653
 
 ized to do business in Alabama is not barred from enforcing its contracts in the courts of this state, however, “unless the business conducted here by [the] nonqualified corporation[ ] is considered ‘intrastate’ in nature.” ’
 
 Building Maintenance Pers., Inc. v. International Shipbuilding, Inc.,
 
 621 So.2d 1303, 1304 (Ala.1993) (quoting
 
 Wise v. Grumman Credit Corp.,
 
 603 So.2d 952, 953 (Ala.1992)). This is because ‘businesses engaged in interstate commerce are protected by the commerce clause in the United States Constitution, U.S. Const., Art. I, § 8, cl. 3, and are therefore immune from the effects of the “door closing” statutes.’
 
 Stewart Mach. & Eng’g Co. v. Checkers Drive In Rests. of N. America, Inc.,
 
 575 So.2d 1072, 1074 (Ala.1991). Because TradeWinds concedes that it was not qualified to do business in Alabama at the time the contract was entered into, or, for that matter, at the time of performance under the contract, ‘the focus of this case is on whether [TradeWinds] was engaged in interstate or intrastate commerce; this issue is ultimately decided on a case-by-case basis.’
 
 Stewart Mach. & Eng’g,
 
 575 So.2d at 1074. ‘[I]n determining whether a corporation is doing business in Alabama within the meaning of § [10-2B-15.02,] courts are flexible and decide each case on its own facts.’
 
 Green Tree Acceptance,
 
 525 So.2d at 1370.
 

 “In
 
 Eli Lilly & Co. v. Sav-On-Drugs, Inc.,
 
 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), the Supreme Court of the United States addressed when a state may require a foreign corporation to obtain a certificate of authority to do business in the state. The Supreme Court stated:
 

 “ ‘Lilly is free to send salesmen into New Jersey to promote this interstate trade without interference from regulations imposed by the State. On the other hand, it is equally well settled that if Lilly is engaged in intrastate as well as interstate aspects of the New Jersey drug business, the State can require it to get a certificate of authority to do business. In such a situation, Lilly could not escape state regulation merely because it is also engaged in interstate commerce. We must then look to the record to determine whether Lilly is engaged in intrastate commerce in New Jersey.’
 

 “366 U.S. at 279, 81 S.Ct. 1316 (footnote omitted). Alabama caselaw also holds that § 10-2B-15.02, Ala.Code 1975, is applicable to those entities that engage in intrastate business and fail to register.
 
 See Brown v. Pool Depot, Inc.,
 
 853 So.2d 181, 185 (Ala.2002) (‘ “It has been held that a foreign corporation doing business in this state without qualifying cannot use our courts to enforce its contracts.
 
 Continental Telephone Corp. v. Weaver,
 
 410 F.2d 1196 (5th Cir.1969). Alabama Const, art. XII, § 232, and §§ 10-2A-247 and 40-14-4, Code 1975 [now codified as 10-2B-15.02, Ala.Code 1975], prohibit a nonqualified foreign corporation from enforcing a contract made in Alabama if it is doing business in Alabama.” ’ (quoting
 
 Competitive Edge, Inc. v. Tony Moore Buick-GMC, Inc.,
 
 490 So.2d 1242, 1244 (Ala.Civ.App.1986))). Thus, whether § 10-2B-15.02 applies to a contract involving a foreign corporation turns on whether the foreign corporation, whether or not engaged in interstate commerce, is engaged in intrastate business.”
 

 No party has cited any caselaw squarely on point. However, in
 
 SGB Construction Services, Inc. v. Ray Sumlin Construction Co.,
 
 644 So.2d 892 (Ala.1994), the supreme court held that Shore/Form Systems, Inc. (“Shore/Form”), a foreign corporation that
 
 *654
 
 was not qualified to do business within Alabama, had not engaged in intrastate commerce in Alabama by actively soliciting business in Alabama and shipping equipment to Alabama pursuant to an equipment lease that resulted from that solicitation. The supreme court stated:
 

 “The undisputed evidence in this case shows that Shore/Form actively sought to lease SGB [Construction Services, Inc.,] equipment for use in the construction of the [Mobile Infirmary Medical Center’s] parking deck and that it was eventually successful in that endeavor. Shore/Form shipped the equipment by common carrier from its Florida plant to the Mobile construction site. Shore/ Form had no offices or plants in Alabama, kept no employees here on a permanent basis, and was not involved in any respect with the actual construction of the parking deck in Mobile. These facts are not sufficient under Alabama law to support the trial court’s conclusion that Shore/Form was engaged in the transaction of intrastate business. This Court has consistently held that the mere solicitation of business in Alabama and business contacts incidental thereto do not constitute the transaction of intrastate business. Furthermore, where a transaction requires only the sale or lease of goods and a delivery of those goods into Alabama, we have held it to be within the scope of interstate commerce.”
 

 644 So.2d at 894.
 

 Thus,
 
 SGB Construction Services
 
 indicates that Central’s soliciting the purchase of mineral royalty interests in Alabama and the execution of royalty deeds pursuant to that solicitation did not constitute intrastate commerce for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02(a). Nonetheless, citing
 
 Ex parte TranSouth Financial Corp.,
 
 608 So.2d 885 (Ala.1992), and
 
 Ex parte Swift Loan & Finance Co.,
 
 667 So.2d 706 (Ala.1995), Henry and Thomas argue that Central’s recording the royalty deed in Alabama constitutes intrastate commerce within Alabama for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02(a) because the recording of the royalty deed was directly related to Central’s corporate purpose of trading in mineral royalty interests.
 
 [2]
 

 In
 
 TranSouth,
 
 Patsy 0. Morrell, a resident of Crenshaw County, sued TranSouth Financial Corporation (“TranSouth”), Associates Financial Life Insurance Company (“Associates”), and several individuals (collectively “the defendants”) in the Cren-shaw Circuit Court. The defendants moved the Crenshaw Circuit Court to transfer the action to the Pike Circuit Court on the ground that venue was not proper in the Crenshaw Circuit Court because, they said, neither TranSouth nor Associates was doing business in Cren-shaw County. Opposing the motion, Mor-rell argued “that TranSouth was ‘doing business’ in Crenshaw County by virtue of its filing mortgages and other security instruments at the county courthouse.” 608 So.2d at 385. The Crenshaw Circuit Court denied the motion, and the defendants pe
 
 *655
 
 titioned the supreme court for a writ of mandamus. Denying the petition, the supreme court stated:
 

 “TranSouth’s primary corporate purpose is making loans. As part of carrying out its primary corporate purpose, TranSouth filed mortgages at the Cren-shaw County courthouse. It has carried out other business, ancillary to the securing or collecting of mortgage debt, at the Crenshaw County courthouse. Therefore, we hold that the filing of mortgages and foreclosure deeds at the Crenshaw County courthouse is sufficient in this case to support a finding, for venue purposes, that TranSouth is ‘doing business’ in Crenshaw County. However, we do not wish to be understood as stating that such actions, which are inherently connected with the business of lending money, will constitute ‘doing business’ for venue purposes when the corporation’s primary purpose is something other than lending money.
 
 See Holman v. Durham Buggy Co.,
 
 200 Ala. 556, 557, 76 So. 914, 915 (1917).”
 

 608 So.2d at 387.
 

 In
 
 Swift,
 
 Randy Youngblood, a resident of Bullock County, sued Swift Loan and Finance Company, Inc., d/b/a Muscogee Credit Company (“Muscogee”), a Georgia corporation, and Phenix Drive In Motors (“Phenix”), a sole proprietorship owned by Steven Shepard and operating in Russell County, in the Bullock Circuit Court. Muscogee and Phenix moved the Bullock Circuit Court to transfer the action to the Russell Circuit Court on the ground that venue was improper in Bullock County because neither Muscogee nor Phenix was doing business in Bullock County and on the ground that, even if venue were proper in Bullock County, the action should be transferred based on the doctrine of forum nonconveniens. The Bullock Circuit Court denied the motion, and Muscogee and Phe-nix petitioned the supreme court for a writ of mandamus. Denying the petition, the supreme court stated, in pertinent part:
 

 “[V]enue is ... proper in Bullock County, because Muscogee was ‘doing business’ in that county. See § 6-3-7. Muscogee had recorded at least one real estate mortgage in Bullock County and it continues to transact business there concerning that mortgage. Accordingly, Muscogee has an interest in real property in Bullock County. Furthermore, Muscogee is in the business of making loans, and, as part of its corporate purpose to make loans, it obtained a security interest in real property located in Bullock County. Therefore, we must conclude that Muscogee was ‘doing business’ in Bullock County, for the purposes of venue.
 
 Ex parte TranSouth Financial Corp.,
 
 608 So.2d 385 (Ala. 1992).”
 

 667 So.2d at 708.
 

 TranSouth
 
 and
 
 Swift
 
 hold that a foreign corporation’s recording an instrument directly related to its corporate purpose in a county in Alabama where it does not otherwise do business constitutes “doing business” in that county for purposes of determining the venue of an action against that foreign corporation. However, those cases do not hold that a foreign corporation’s recording a deed directly related to its corporate purpose in Alabama changes a transaction involving that deed that would otherwise constitute interstate commerce into a transaction constituting intrastate commerce for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02(a).
 

 As noted above, the holding of the supreme court in
 
 SGB Construction Services
 
 that the active solicitation of business in Alabama and the shipping of equipment to Alabama pursuant to an equipment lease executed as a result of that solicitation do
 
 *656
 
 not constitute intrastate commerce for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02(a) indicates that Central’s soliciting the purchase of mineral royalty interests in Alabama and the execution of royalty deeds as a result of that solicitation did not render its transaction with Willie Mae intrastate for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02. We are not persuaded by Henry and Thomas’s argument that the mere recording of the royalty deed changed what was otherwise interstate commerce into intrastate commerce for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02. Thus, we conclude that the transaction between Willie Mae and Central constituted interstate commerce for purposes of determining whether the Commerce Clause barred the application of § 10-2B-15.02 to that transaction and, therefore, that the Commerce Clause barred the application of § 10-2B-15.02(a) to that transaction. Thus, because we conclude that the royalty deed was not void by virtue of § 10-2B-15.02(a), we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . In pertinent part, the version of § 10-2 ISIS.02(a) that was in effect on January 22, 1998, provided:
 

 "All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.”
 

 Section 10-2B-15.02(a) was amended effective January 1, 2000.
 

 [2]
 

 . Henry and Thomas do not argue that Central's ownership of a mineral royalty interest in land, located in Alabama by virtue of the royalty deed made the transaction involving Willie Mae and Central intrastate rather than interstate for purposes of determining whether the Commerce Clause bars the application of § 10-2B-15.02(a). " 'When an appellant fails to properly argue an issue, that issue is waived and will not be considered.
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).’
 
 Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996).”
 
 Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d at 319.